Case 66.—PROSECUTION AGAINST ROBERT L. AND JACOB S. CRIGLER FOR UNLAWFULLY SELLING LIQUOR.—May 18.

## Crigler, &c. v. Commonwealth, No. 173.

Appeal from Laurel Circuit Court.

H. C. FAULKNER, Circuit Judge.

## Defendants convicted and appeal.    Affirmed.

Intoxicating Liquors—Local Option—Special Acts—Effect—Judicial Notice—Distillers Retailing—C. O. D. Shipments—Interstate Commerce—Device to Evade Statute.

1. Intoxicating Liquors—Local Option—Special Acts—Effect—Judicial Notice—The local prohibition law commonly called the "Five Counties' Act," approved April 4, 1884, forbids the sale of liquor by retail in Laurel county; it results, therefore, that in Laurel county the act of March 10, 1894, as amended, which constitutes chapter 81, Kentucky Statutes, must be construed as part of the act of 1884, regulating and controlling the former in the matter of procedure, the quantity of liquor to be sold, and the punishment. In other words, the act of 1894 is operative in Laurel county without the necessity of a vote by the people. Of the existence of the act of 1884 and the operation of the act of 1894 this court will take judicial notice.

2. Distillers—Retailing—C. O. D. Shipments—Interstate Commerce—Device to Evade Statute—Under sub-section 4 of sec. 2757b, Kentucky Statutes, which is a part of the general local option act of 1894, as amended in 1902, providing that "all the shipments of spirituous, vinous or malt liquors to be paid for on delivery, commonly called C. O. D. shipments, into any county, city, town, district or precinct where said act is in force, shall be unlawful, and shall be deemed sales of such liquors at the place where the money is paid, or the goods delivered." Where intoxicating liquors are made and sold by a distiller in this State in quantities less than five gallons and sent to Cincinnati, O., to be shipped to the purchaser C. O. D., in a town where the local option law is in force, such shipment being for the purpose of imparting to it the quality of interstate commerce, is a mere device to evade the laws of this State, and is no protection to the seller, and for every such sale the parties so engaged are liable to the penalties prescribed by the local option law in this State.

FURBER & JACKSON, W. L. BROWN and GEORGE G. BROCK for appellants.

To recapitulate, we ask that the judgment be reversed for the following reasons:

1. The demurrer to the indictment should have been sustained because the indictment did not charge an offense and there was a departure from the charge in the specifications.

**vol. 120—33**

Crigler, &c. v. Commonwealth.

2. The Commonwealth should have been compelled to elect which act it would prosecute under.

3. The court should have peremptorily instructed the jury to find for the defendant at the close of the Commonwealth's testimony.

4. The court, failed and refused to properly instruct the jury as to the law governing the case.

5. The verdict is not sustained by the evidence.

6. The court allowed incompetent evidence to go to the jury over the objections and exceptions of the appellants.

7. The act of the General Assembly of Kentucky, approved March 11, 1902, is repugnant to the commerce clause of Constitution of the United States and is void. We ask a reversal of the judgment with directions to dismiss the indictment.

## AUTHORITIES CITED.

Hall v. DuCuir, 95 U. S., 485; Cairns v. State, 68 Pacific R., 621; 2d Amer. & Eng. Ency. of Law; Pilgreen v. State, 71 Ala., 368; James v. Commonwealth, 102 Ky., 108; Garbrock v. Commonwealth, 96 Pa., 449; 42 Am. Rep., 550; State v. Carl, 43 Ark., 353; 51 Amer. Rep., 556; Act General Assembly of Ky., approved March 11, 1902; Vance v. W. A. Vandercook Co., 170 U. S., 436; 26 U. S. Stat. at Large, 313, chap., 728; Wilkenson v. Raher, 140 U. S., 545; Rhodes v. Iowa, 170 U. S., 412; 7 Cyc., 437; 12 Cyc., 237; Commonwealth v. Russell, 11 Ky. Law Rep., 576; Hanley v. Kansas City S. R. Co., 187 U. S., 617; Gibson v. Ogden, 9 Wheat., 1; U. S. v. Adams Express Co., 119 Fed., 240; U. S. v. Lackey, 120 Fed., 577; Block on Intoxicating Liquors, sec. 434; Duff, Jr. v. Commonwealth, 24 Ky. Law Rep., 201.

N. B. HAYS, Attorney General, LORAINE MIX and CHAS. MORRIS for appellee.

1. This is not a private statute, but a "public statute of local application." It is, however, referred to by its title, and gives the date of its approval in said indictment. This court held a similar local option act to be a public act of local application, and this in the case of Powers v. Commonwealth, 90 Ky., 167.

2. The local option law is in force in Laurel county by reason of this act of the General Assembly. The status of the various counties, cities, towns, districts and precincts as to local option was preserved and maintained under sub-secs. 27 and 29 of sec. 59 and sec. 61 of the present Constitution.

3. That is to say, the General Assembly was prohibited from repealing or amending any local option act or law then in force

by special legislation, but by these constitutional provisions it was made the duty of the General Assembly to enact a general law whereby the status fixed by the Constitution might be changed; that is to say, those places which were under the local option law might authorize the sale of such liquors, and those places which were not local option might become so.

The act of March 10, 1894, was passed for this purpose. The act is a means to an end. Under the construction given by the courts, in order to accomplish the great purpose and aim of the framers of the present Constitution, to establish a uniform system of laws for this Commonwealth, and to subject all alike to the same punishment for like offenses. Its provisions as to procedure and punishment are substituted in lieu of the like provisions in the various local option acts of the State. This was also the aim and object of the Legislature, and the construction given by the court to the operation of said act of March 10, 1894. The decisions of this .court so construing said act will be found to be as follows:

Stamper v. Commonwealth, 102 Ky., 33; Thompson v. Commonwealth, 103 Ky., 685; Brann v. Hart, 17 Ky. Law Rep., 463; Commonwealth v. Overby, 21 Ky. Law Rep., 843; Raubold v. Commonwealth, 21 Ky. Law Rep., 1125; Brook v. Commonwealth, 21 Ky. Law Rep., 1342; Commonwealth v. Bottom, 22 Ky. Law Rep., 410; Edmonson v. Commonwealth, 22 Ky. Law Rep., 1902; Harp v. Commonwealth, 22 Ky. Law Rep., 1792; Farris v. Commonwealth, 23 Ky. Law Rep., 580; Bailey v. Commonwealth, 23 Ky. Law Rep., 1223; Lock v. Commonwealth, 24 Ky. Law Rep., 654; Lock v. Commonwealth, 25 Ky. Law Rep., 76.

4. From the evidence herein, and the former decisions of this court, the alleged shipment from Cincinnati, Ohio, was, and is, a scheme, trick, device or subterfuge resorted to in order to evade the local option law of this State. (Ky. Stats., sec. 2570; Davis v. Commonwealth, 26 Ky. Law Rep., 597; Rowe v. Commonwealth, 24 Ky. Law Rep., 974; Stamper v. Commonwealth, 107 Ky., 33; Teal v. Commonwealth, 22 Ky. Law Rep., 350.)

OPINION BY JUDGE BARKER—Affirming.

The appellants were indicted by the grand jury of Laurel county, charged with the offense of retailing liquor contrary to law. A trial resulted in their conviction and a fine being inflicted, and from the judgment enforcing this verdict they have appealed.

Laurel is one of the five counties in which the re-

tailing of spirituous liquors is prohibited by an act of
the General Assembly of the Commonwealth of Ken-
tucky, commonly called the "Five Counties' Act"
(Acts 1883, 84, vol. 1, p. 1116, chap. 598). In Locke v.
Commonwealth, 74 S. W., 654 25 Ky. Law Rep., 76,
we reviewed all the cases theretofore decided bearing
upon the subject, and held that wherever a local law
was in force, either through vote of the people or by
legislative will, the sale of liquor by retail remained
prohibited, not according to the terms of the local act,
but as if a vote had been held in such locality against
the sale of liquor under the act of March 10, 1894
(Acts 1894, p. 123, chap. 52). It results, therefore, that
in Laurel county the act of March 10, 1894, as
amended, which constitutes chapter 81, Ky. Stats.,
1903, must be construed as part of the act of 1884,
regulating and controlling the former in the matter
of procedure, the quantity of the liquor sold to consti-
tute an offense, and the punishment. In other words,
the act of 1894 is operative in Laurel county without
the necessity of a vote by the people. Of the exist-
ence of the act of 1884 and the operation of the act of
1894 this court will take judicial notice.

The local prohibition law, commonly called the
"Five Counties' Act," approved April 4, 1884 (Acts
1883-84, vol. 1, p. 1116, chap. 598), forbids the sale of
liquor by retail in Laurel county. The act of 1894,
as amended by Acts 1902, p. 41, C. 14 (sec. 2557, Ky.
Stats., 1903), provides as follows: "Any person who
shall sell, barter, or loan, directly or indirectly, any
such liquors in said county, city, town, district or pre-
cinct, shall, upon conviction, be fined not less than
sixty nor more than one hundred dollars, or be con-
fined in the county jail not less than ten nor more than
forty days, or both so fined and imprisoned, in the dis-
cretion of the court or jury for each offense." Sub-

section 4 of sec. 2757b, Ky. Stats., 1903, which is also a part of the general local option act of 1894, as amended in 1902, is as follows: "All the shipments of spirituous, vinous or malt liquors to be paid for on delivery, commonly called 'C. O. D. shipments,' into any county, city, town, district or precinct where said act is in force shall be unlawful and shall be deemed sales of such liquors at the place where the money is paid or the goods delivered; the carrier and his agents selling or delivering such goods shall be liable jointly with the vendor thereof." The real question involved in this case is whether or not the sales made by the appellants constituted interstate commerce. If so, then their acts were not subject to the control of the laws of Kentucky, and this case must be reversed. If, however, the sales were such as may lawfully come within the purview of the local option statutes of the State, then they are guilty, and the judgment of the trial court must be affirmed.

Appellants, Robert L. and Jacob S. Crigler, are partners, conducting a distillery business under the firm name of Crigler & Crigler. They own and operate a distillery in Scott county, Ky., and have places of business both in Covington, Ky., and Cincinnati, Ohio. Prior to the enactment of the amendment in 1902, commonly called the "C. O. D. statute," and which is quoted above, they had no business place in Cincinnati, but had been for several years theretofore making what is known as "C. O. D. shipments" from Covington to various points throughout the State of Kentucky, among which was Laurel county, where, under the operation of the act of 1884, the retailing of spirituous liquor was prohibited. Their mode of business was to send an agent to the county to take orders and forward them to appellants at Covington, who filled them and shipped direct to

the customer by the Adams Express Company, collect on delivery. The express company delivered the packages to the customers, collected the selling price, and paid it over to the appellants. By conducting the business in this manner they successfully avoided the penalty of the law prohibiting the retailing of liquor in Laurel county under the principle enunciated in the opinion of this court in James v. Commonwealth, 102 Ky., 108, 19 Ky. Law Rep., 1045, 42 S. W., 1107, holding that, where such C. O. D. shipments were made, the sale took place where the order for the whisky was received, and not at the place where it was delivered by the carrier and paid for by the customer. To prevent the nullification of the local option law thus made possible, the C. O. D. statute was enacted.

After 1902 the appellants, evidently not desiring to surrender their business of retailing liquor in prohibition counties on the one hand, nor to subject themselves to the punishment denounced by the statute as amended on the other, opened up a branch house in Cincinnati, and notified their customers in local option districts in Kentucky that thereafter all orders must be sent to the Cincinnati business place, from which all shipments would be made. In the case at bar the specific facts constituting the offense of which appellants were found guilty are as follows: One Britt Davis forwarded to appellants' place of business in Cincinnati, Ohio, an order for four quarts of whisky, which was accepted by appellants, who shipped it to him in Laurel county through the Adams Express Company, "collect on delivery." It was delivered to the consignee in Laurel county. The price was there paid to the express company, and forwarded to appellants. The whisky was contained in four quart bottles, which were inclosed in a box,

arranged and sealed for shipment.. The appellants contend that this transaction was interstate commerce, and not controlled or affected by the statutes of Kentucky. For the Commonwealth it is insisted, first, that the sale was not interstate commerce, because the retailing of liquor is not interstate commerce; and, second, if this be not true, the sale was not interstate commerce, because the whisky was manufactured in Kentucky by citizens thereof, and sent across the State line into Ohio, merely for the purpose of evading the local option statutes of Kentucky.

Upon the trial of the case the State introduced Britt Davis, who testified to sending the order to appellants through D. C. Adams; that in return the whisky was shipped to him at East Bernstadt, Laurel county, and there delivered to and paid for by him. In response to question 11, "What amount did you get," he answered: "A gallon and one-half pint bottle in a little box. They called it a 'bible,' I think." The witness showed that the "bible," in addition to the liquor, contained a corkscrew and a dram glass. Upon these were printed: "Woodland Whisky. Adopted by the United States Government for Hospital Purposes, Crigler & Crigler, Distillers, Covington, Kentucky." In response to question 35 the witness stated that he was told by Mr. Barkley, an agent of appellants, that if he sent to Covington for the whisky he could get it for $3.35 by sending the money, but if he sent to Cincinnati he would have to give $3.85, "and they (appellants) had to send it to Cincinnati to ship it. Q. 36. Did he make any other statement to you? A. He said he could not ship from Covington C. O. D., as it was against the law; that he had to take it to Cincinnati, Ohio, to ship."

D. C. Adams testified that he was an agent of appellants to take orders in Laurel county, and had

written authority to represent them. A paper to that effect was introduced as evidence, and is as follows:

"This is to certify that Mr. D. C. Adams, East Bernstadt, Kentucky, has been appointed our authorized representative to take orders for Woodland Whisky. Territory assigned, Laurel county. We have paid all Government licenses which gives our representatives the right to take orders in any part of the United States, whether that place is local option, prohibition or otherwise. This paper empowers our representative to take orders only which the laws of the revenue department permit him to do for us. We bill, ship and collect. By a special ruling of the United States Supreme Court express companies may now deliver whisky C. O. D. in any State, and the said ruling holds that any local option or prohibition law to the contrary is in violation of the interstate commerce law, and is therefore not binding. Crigler & Crigler, distillers of Woodland Whisky, and sole proprietors of the U. S. bonded warehouses and distillery No. 54, Seventh Revenue District of Kentucky. [Seal.] (Crigler & Crigler, Woodland Distillery, Covington, Ky.) Covington, Ky., this day of April 13, 1903."

J. W. Morin testified that he had taken orders for appellants, and had received two letters from them, which show that Mr. Barkley, spoken of by one of the witnesses as the agent of appellants, represented them, and also their manner of doing business and from what points. These letters were introduced in evidence, and are as follows:

"Covington, Ky., April 10, 1903.
"J. W. Morin, Esq., London, Ky.:
"Dear Sir:—As per the order of our Mr. Barkley, we are shipping to your city to-day several consign-

Crigler, &c. v. Commonwealth.

ments of whisky; he advises you have accepted the
agency, and you will be allowed commission on these
orders, as per enclosed terms to representatives. Com-
mission will be paid you on all business from your
territory whether the orders come from you or direct
from the customers. There will be no trouble in re-
gard to the express agent at London and Pittsburg
delivering C. O. D. shipments as we have taken up
the matter with the proper authorities and will in-
struct the agent to deliver C. O. D. shipments. The
orders must be mailed to our Cincinnati office as per.
enclosed envelopes. We will do everything in our
power to assist you, and in the box for yourself we
have included two quarts for sample purposes. We
will keep you supplied with samples in the propor-
tion of one quart for every ten gallons sold.

"CRIGLER & CRIGLER."

"Covington, Ky., May 14, 1903.
"Mr. J. W. Morin, London, Ky.:
"Dear Sir—We are in receipt of your letter of the
12th, enclosing ten orders; same have had our prompt
attention and gone forward by first express, all
charges prepaid. We note your remarks in refer-
ence to a sample sent you on the 9th of the month;
we hold the express company's receipt for same,
and they should have delivered it on the 12th. If
you do not receive it in a day or two, advise us
and we shall ship you a duplicate and make a claim
against the express company for the one lost. In the
future always-enclose your order blanks to our Cin-
cinnati branch, as per enclosed envelope, that will in-
sure prompt shipment as soon as your orders ar-
rive. Looking over the books, we find there are five
shipments on which you have not had returns, per-
haps they have been paid in the express company

and we will receive them in a few days. As soon as we have returns, we will be glad to pay you commission. Thanking you for the orders, we are, very respectfully,

"CRIGLER & CRIGLER."

At the close of the Commonwealth's testimony the appellants introduced no evidence in their own behalf, apparently willing to submit the case upon that of the Commonwealth. There can be no manner of doubt that they were guilty of the offense with which they stood charged, unless the shipment they made of the whisky from their warehouse in Cincinnati to the consignee in Laurel county, Ky., is protected from the operation of the prohibition laws of this State by the interstate commerce clause of the Constitution of the United States. Our State has adopted the standard fixed by the act of Congress, whereby selling less than five gallons of spirituous liquors at one time constitutes retailing. The quantity sold in the case at bar was one gallon, and the question before us is whether, under the facts of this case, the shipment in question was interstate commerce. It may be conceded at the very outset that the shipment is not taken out of the category of interstate commerce by the act of Congress of August 8, 1890 (26 Stats., 313, chap. 728 [U. S. Comp. St., 1901, p. 3177]), commonly called the "Wilson bill." Under this act, as construed by the Supreme Court of the United States In re Rahrer, 140, U. S., 545, 11 Sup. Ct., 865, 35 L. Ed., 572, and Rhodes v. Iowa, 170 U. S., 412, 18 Sup. Ct., 664, 42 L. Ed., 1088, the prohibition law of the State did not attach until the whisky was delivered to the consignee. If, therefore, we are to reach the conclusion that the shipment here involved was not interstate commerce, it must be

Crigler, &c. v. Commonwealth.

upon the ground either that selling liquor by retail is not interstate commerce, or that, the particular liquor in question having been made in Kentucky and shipped by citizens of this State out of the State for the purpose of being reshipped into the State in order to evade the prohibition laws, is such a trick or device as forbids it being considered interstate commerce for that reason. No one who reads this record will long hesitate in reaching the conclusion that the act in question was a retailing of liquor, and that the form of the procedure was adopted merely for the purpose of giving the color of the interstate commerce to the transaction so as to evade the penalty denounced by the prohibitory State statute for its violation. The case of Austin v. Tennessee, 179 U. S., 343, 21 Sup. Ct., 132, 45 L. Ed., 224, involved the question as to whether or not a single package of cigarettes shipped into the State of Tennessee from North Carolina contrary to a statute of the former State, was interstate commerce, and therefore protected by the Constitution of the Federal Government. In the opinion, at p. 359 of 179 U. S., p. 138 of 21 Sup. Ct. (45 L. Ed., 224), is said: "The real question in this case is whether the size of the package in which the importation is actually made is to govern, or the size of the package in which bona fide transactions are carried on between the manufacturer and the wholesale dealer residing in different States. We hold to the latter view. The whole theory of the exemption of the original package from the operation of State laws is based upon the idea that the property is imported in the ordinary form in which, from time to time immemorial, foreign goods have been brought into the country. These have gone at once into the hands of the wholesale dealers, who have been in the habit of breaking the

packages and distributing their contents among the several retail dealers throughout the State. It was with reference to this method of doing business that the doctrine of the exemption of the original package grew up. But, taking the words 'original package' in their literal sense, a number of so-called 'original package manufactories' have been started through the country, whose business it is to manufacture goods for the express purpose of and sending their products into other States in minute packages, that may at once go into the hands of the retail dealers and consumers, and thus bid defiance to the laws of the State against their importation and sale. In all the cases which have heretofore arisen in this court the packages were of such size as to exclude the idea that they were to go directly into the hands of the consumer, or to be used to evade the police regulations of the State with regard to the particular article. No doubt the fact that cigarettes are actually imported in a certain package is strong evidence that they are original packages within the meaning of the law, but this presumption attaches only when the importation is made in the usual manner prevalent among honest dealers, and in a bona fide package of a particular size. Without undertaking to determine what is the proper size of an original package in each case, evidently the doctrine has no application where the manufacturer puts up the package with the express intent of evading the laws of another State, and is enabled to carry out his purpose by the facile agency of an express company and the connivance of his consignee. This court has repeatedly held that, so far from lending its authority to frauds upon the sanitary laws of the several States, we are bound to respect such laws and to aid in their enforcement, so far as can be done, with-

out infringing upon the constitutional rights of the parties. The consequences of our adoption of defendant's contention would be far-reaching and disastrous. For the purpose of aiding a manufacturer in evading the laws of a sister State, we should be compelled to recognize anything as an original package of beer from a hogshead to a vial; anything as a package of cigarettes from an importer's case to a single paper box of ten, or even a single cigarette, if imported separately and loosely; anything from a bale of merchandise to a single ribbon—provided only the dealer sees fit to purchase his stock outside the State and import it in minute quantities." This reasoning applies with especial force to the transaction at bar. Here the intention to evade the prohibition laws of the State was not pretended to be concealed. Appellants sent their agent into a prohibition county soliciting orders, and, when obtained, shipped whisky which had been manufactured in Kentucky and sent across the line into the State of Ohio for the purpose of imparting to it the quality of interstate commerce, and of then reshipping it into the State to customers, in violation of law. Such a transaction is a mere device to evade the laws of the State. It has not one attribute of legitimate interstate commerce. It is simply an attempt to retail liquor contrary to the laws of the State, under the protection of the Constitution of the United States. If this method of doing business is to receive the protection of the Constitution as interstate commerce, it needs no argument to demonstrate that there can be no effective prohibition of the retailing of liquor in any State unless all the other States have likewise prohibited it; for it is evident that it would lie in the power of any dealer on one side of the mathematical line dividing the States to

send his messengers across the line, and deliver the prohibited liquor by the quart, pint, or even drink. If the appellants can ship whisky to Laurel county by the quart or gallon, from their warehouse in Cincinnati, why might they not, by a convenient use of telephone, send it across from Cincinnati to Covington by the glass, and call that the original package? But we feel our inability to state the unsoundness of appellants' contention as forcibly as has the Supreme Court in the opinion above quoted. Borrowing the language of Mr. Justice Brown, it is evident that "the doctrine (of original package) has no application where the manufacturer puts up the package with the express intent of evading the laws of another State, and is enabled to carry out his purpose by the facile agency of an express company and the connivance of his consignee."

We conclude, therefore, upon the authority of Austin v. Tennessee, this shipment was not legitimate interstate commerce, but a mere trick or device to evade the prohibition laws of the State; and this particular whisky was never interstate commerce for the additional reason that it was manufactured by citizens of this State, in this State, sent to Ohio, and then shipped back into the State for the express purpose of evading the prohibition laws of this Commonwealth.

The record discloses that appellants notified their customers, after the enactment of the C. O. D. statute, that they must send their orders to the Cincinnati office, and that a small additional sum must be paid in excess of the usual price to cover the cost to appellants of shipping the whisky to Cincinnati for the purpose of reshipment back to the customer. This transaction was so transparent a device as to require no argument to demonstrate that it had no ele-

ment of interstate commerce, and was therefore subject to the prohibition laws of the State. This being true, there is no question of the guilt of appellants.

The whole subject of the rights of Congress under the commercial clause of the Constitution and the police power of the State under its reserved rights is thus summarized by John Randolph Tucker in his work on the Constitution of the United States (vol. 2, sec. 260): "The delicate boundary line between the Congressional and State power may be drawn by the judiciary upon the principle that the State may not mala fide, under color of its reserved power, impinge on the commercial power of Congress; and Congress may not, under color of its granted power, impinge on the reserved power of the State. Bona fides is required on both sides. This bona fides is equivalent to the word 'frankly' in the quotation above from the chief justice. Each must use its distinct power in such a way as not to trench on the power of the other. Where the judiciary find that a State uses its reserved power as a pretext to regulate commerce, or that Congress under the commerce power invades the reserved clause jurisdiction of the State, it shall so adjust it in both cases as to maintain the supreme law of the land over Congress and the States. Hence the early laws of Congress regulating commerce respected the quarantine laws of the State, and aided their maintenance, and did not obstruct them. And this because a law to regulate commerce was neither necessary nor proper, but the contrary, when it introduced into the State disease and death, physical or moral, contrary to the State quarantine."

It is believed that this states the true rule of the subject matter under discussion. To quote the language of Mr. Justice Gray in his dissenting opinion

in Leisy v. Hardin; 135 U. S., 160, 10 Sup. Ct., 702, 34 L. Ed., 128: ''Because to hold otherwise would add nothing to the dignity and supremacy of the powers of Congress while it would cripple, not to say destroy, the whole control of every State over the sale of intoxicating liquors within its borders.''

Judgment affirmed.