CASE 25.—PROSECUTION BY COMMONWEALTH AGAINST THE ADAMS EXPRESS COMPANY FOR A VIOLA-TION OF THE LOCAL OPTION LAW.—June 17, 1905.

# Adams Express Company v. Commonwealth

Appeal from Laurel Circuit Court.

H. C. FAULKNER, Circuit Judge.

Defendant convicted and appeals.    Affirmed.

Intoxicating Liquors—Local Option—C. O. D. Shipments—Liability of Carrier—Defense—Interstate Commerce.—An express company which knowingly carries a C. O. D. shipment of liquor from a foreign state into local option territory to a consignee who informs it that he has not ordered the same but will accept it if it is held for him until he can procure the money to defray the charges, becomes, by holding the liquor a week pursuant to the arrangement with the consignee, a mere bailee or warehouseman of the liquor, and cannot defend a prosecution under Ky. Stats., 1903, section 2557, sub-section 4, declaring sales of liquor shipped C. O. D. into local option territory unlawful, and making the carrier selling or delivering the goods liable jointly with the vender, on the ground that the shipment is interstate commerce, but is guilty of a violation of the statute, as the actual seller of the liquor.

W. L. BROWN and GEORGE BROCK for appellant.

N. B. HAYS, Attorney General, and C. H. MORRIS for appellee.

(No briefs—record misplaced.)

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, the Adams Express Company, a

common carrier, was indicted, tried, and convicted in the Laurel circuit court for the offense of unlawfully, willfully, and knowingly shipping, procuring for, furnishing, selling, and delivering spirituous liquor, by C. O. D. shipment, to one George Meece, at East Bernstadt, in Laurel county; the sale of such liquor being prohibited by certain statutes enacted by the Legislature of Kentucky, approved April 4, 1884, March 10, 1894, and March 11, 1902. These acts were then in force in the five counties of Laurel, Rockcastle, Jackson, Owsley, and Clay. The trial jury fixed the punishment of appellant at a fine of $60, on which judgment was duly entered; and, the lower court having overruled its motion for a new trial, it prosecutes this appeal.

In Crigler v. Commonwealth, 120 Ky. 512, 87 S. W. 276, 27 Ky. Law Rep. 918, it was held by this court that what is known as the "Five Counties Act," of April 4, 1884 (1 Acts 1883-84, p. 1116, c. 598), forbidding the sale of liquors in the five counties named therein, is in force in Laurel county, as is the local option law of March 10, 1894 (Acts 1894, p. 123, c. 52), together with the amendment thereto of March 11, 1902 (Laws 1902, p. 41, c. 14; see section 2557, Ky. St. 1903), and that the two acts last mentioned must be construed as a part of the act of 1884; regulating and controlling the former as to procedure, the quantity of liquor sold to constitute an offense, and the punishment.   That is, it was held that the local option act of 1894, as amended by that of 1902, is operative in Laurel county without the necessity of a vote by the people, and that of the existence of the act of 1884, and the operation of that of 1894 as amended in 1902, this court will take judicial notice.

The fine inflicted against appellant was imposed under the act of 1894, as amended in 1902 (section

2557, Ky. St. 1903). Sub-section 4, section 2557, Ky. St. 1903, which is also a part of the general local option law as amended in 1902, provides: "All the shipments of spirituous, vinous or malt liquors to be paid for on delivery, commonly called C. O. D. shipments, into any county, city, town, district or precinct where said act is in force shall be unlawful and shall be deemed sales of such liquors at the place where the money is paid, or the goods delivered; the carrier and his agents selling or delivering such goods shall be liable jointly with the vendor thereof." The offense of which appellant was convicted is the one denounced by the foregoing section, and it is insisted for it that the alleged sale of spirituous liquor for which it was indicted and convicted under the statute was a mere delivery of the liquor by it as a common carrier, in the usual course of business, and the money paid by its agent by the consignee was in satisfaction of the amount due the consignor therefor upon a sale thereof made in the State of Ohio, which appellant, as a common carrier, was, under the contract of shipment, compelled to collect and remit consignor upon delivery of the goods, and, further, that the transaction was authorized, and appellant protected, by the law and regulations of interstate commerce.

The case went to the jury upon the evidence of the commonwealth alone, none having been introduced by the appellant. The undisputed facts established by the evidence were: First, That George Meece, within a year before the finding of the indictment, called at appellant's office in East Bernstadt with his brother, who had ordered and was expecting from Cincinnati a package of whisky, which he found awaiting him in appellant's office. Second, While in the express office, George Meece was informed by

appellant's agent in charge that a package containing a gallon of whisky was then in the office for him, the charge upon which was $3.85. He then informed appellant's agent that he had not ordered the whisky, was not expecting it, and had not the money with which to pay the charges thereon, but, if satisfactory to the agent, and the latter would hold the whisky for him until the following Saturday—a week later—he would call at the express office, pay for the whisky, and take it away. To all of which the agent readily assented, and on the following Saturday Meece called at the express office, paid the agent $3.85 for the gallon of whisky, received and took it away. Third, The agent knew that the package contained a gallon of whisky (i. e., four quart bottles), and that it was shipped by Crigler & Crigler, of Cincinnati, but did not advise Meece of the name of the consignors, though informed by Meece that he had not ordered the whisky. Fourth. The agent also knew the business of Crigler & Crigler, and that they were in the habit of shipping almost daily by express, C. O. D., to appellant's East Bernstadt office, packages of both whisky and brandy, consigned to persons of that community.

In view of the foregoing facts, it becomes necessary to determine whether, in holding the whisky a week at Meece's request, and until the latter again called at the office, paid the necessary charges, and took it, the appellant continued in the relation of carrier to the goods, or did it by the transaction in question cease to be a common carrier, and become a mere bailee or warehouseman? On this point, Hutchinson on Carriers (2d Ed.), section 354, states the general rule as follows: "The law upon this subject may therefore be stated to be that, so long as the carrier continues in the relation of carrier to the goods, he is

under an absolute engagement that they shall be delivered only to the person to whom they are consigned, but that when, from any cause, he ceases to hold them as carrier, and becomes a mere warehouseman or bailee, the degree of responsibility resting on him becomes changed, and from that moment, if the goods are lost by misdelivery or otherwise, it becomes a question of fact whether he has exercised reasonable care and diligence." In section 356 of the same book it is said: "It therefore frequently becomes a question of importance as well as of difficulty to determine when and under what circumstances the relation of carrier to the goods has ceased, and their custody has become a bailment. It may be stated as a general rule that when the carrier has done all the law requires him to do towards delivery, and from any cause he fails to effect it, and the goods are continued in his possession, he from that time becomes responsible only as depositary." In further elaboration of this doctrine, the author, in section 385, tells us: "But it has been held that if the carrier is instructed not to deliver the goods until they are paid for, and the consignee, instead of refusing to take them, promises to pay for them and take them in a few days, and requests the carrier to keep them until he is ready to pay for them, the carrier becomes a warehouseman of the goods, and if they are lost or destroyed while so held, without any fault or negligence of his, he will not be liable, although he has given no notice of the fact to the consignor." A similar view of the doctrine supra was announced by this Court in Wald & Co. v. Louisville, Evansville & St. Louis R. Co., 92 Ky. 645, 13 Ky. Law Rep. 853, 18 S. W. 850. So we may accept it as the law of this State. When a package marked "C. O. D." (collect on delivery) is received by an express company for

shipment, it is manifestly upon the conditions that such company, as a common carrier, shall promptly deliver it to the consignee, collect of the latter a specified sum therefor, and with equal promptness return it to the consignor. Express companies do not more surely deliver goods intrusted to them than do ordinary freight trains, but they undertake a quicker delivery, and, by reason of such undertaking, are permitted to charge and are paid more for the transportation of goods than are railroad companies. A failure, therefore, upon their part to immediately— that is, in a reasonable and customary time—deliver goods shipped in their charge, or their holding of such goods an unreasonable or unusual time, changes their relations at once from a common carrier to that of ordinary warehouseman. In view of this rule, and under the facts of the case at bar, we must conclude that at the time of delivering to Meece the whisky in question, and in receiving the price paid by the latter therefor, appellant did not sustain to that article of merchandise, or to the consignor or consignee, the relation of common carrier, but merely that of a bailee or warehouseman, for which reason we are unable to see how it was or could have been protected in the transaction by the law of interstate commerce.

We are aware that section 5258 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3564) confers upon railroad and express companies authority to carry freight from one State to another, free from interference on the part of the States, and that the Supreme Court of the United States, construing this statute, and defining the power of Congress with reference to its right "to regulate commerce with foreign nations, among the several States and with the Indian tribes," has repeatedly held "that State legislation which seeks to impose a direct bur-

den upon interstate commerce or to interfere directly with its freedom does encroach upon the exclusive power of Congress.'' It has also been held by the same Court that when intoxicating liquors are shipped from one State to another by express C. O. D., upon an order of instructions from the purchaser residing in such other State, the contract of sale is to be regarded as completed in the State from which the shipment is made, upon the vender's there delivering the goods to a common carrier, although with the direction to collect the price from the consignee before its delivery to him, and that the right of the importer to thus sell and ship liquors in unbroken packages in another State exists regardless of the local laws of such State prohibiting such sales and shipments, and notwithstanding the provisions of the act of Congress known as the ''Wilson Bill'' (Act Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St., 1901, p. 3177]), which was intended to enable the several states, under the exercise of the police power, to enact such legislation as would give them the same control over intoxicating liquors shipped therein from other states after their arrival, whether in original packages or otherwise, as they might exercise over those of home manufacture or production. But in the case at bar the conviction of appellant was not in violation of any regulation of the laws of interstate commerce. It sold and delivered to Meece a gallon of whisky, and received of him $3.85 as the price of such sale, all with full knowledge of the fact that it had not been ordered by him. Furthermore, though appellant may have originally received the package of whisky as a common carrier, at the time of its sale it, as before stated, did not sustain to the package of whisky or to the consignor or consignee the relation of carrier, but that of bailee or warehouseman. In other words,

the sale was not made in another state, or by a shipper therein, but by appellant at East Bernstadt, in Laurel county, Ky., and in violation of the laws of the State, which, by subsection 4 of section 2557, Ky. Stats., 1903, makes such sale a misdemeanor. Whatever ground may be urged for holding that this statute is inoperative as to a shipment of spirituous liquors into this State from another state, made by the vender upon an order received in such other state from the purchaser in this State, it certainly cannot be void as to a sale wholly made and consummated in this State by a bailee after the whisky was received from another state.

Being of opinion that appellant's conviction was proper, the judgment is affirmed.