CASE 33.—PROSECUTION AGAINST THE L. & N. R. R. CO.
    FOR A VIOLATION OF THE LOCAL OPTION LAW.—
    June 20.

# Louisville & N. R. R. Co. v. Commonwealth

Appeal from Laurel Circuit Court.

H. C. FAULKNER, Circuit Judge.

Defendant convicted and appeals.—Reversed.

1. Intoxicating Liquors—Sales—Persons Liable.—Under Ky.
   Stats., 1903, Sec. 2572, providing that the person in possession
   of premises on which liquor is sold in violation of law shall
   be fined, etc., a railroad company cannot be fined for per-
   mitting an express company, having its office in the railroad
   company's building, to deliver whisky and collect money for
   it, where the express company was authorized by law so to do.
2. Same—Prosecution—Evidence.—Ky. Stats., 1903, Sec. 2572,
   provides that the person in possession of premises on which
   liquor is sold in violation of law shall be subject to fine, etc.
   Held, that proof that an express company having an office
   in the building owned by defendant railroad company, deliv-
   ered whisky which had not been ordered and collected money
   for it, in a county where the local option law was in force,
   while showing a sale there of the whisky, was not conclusive,
   defendant being entitled to show that the transaction was
   one of interstate commerce, conducted according to he usual
   course of business, and that the express company in deliver-
   ing the whisky and collecting the money for it acted in good
   faith, without knowing or having reasonable grounds to be-
   lieve that the package it delivered contained whisky or had
   not been ordered, in which event defendant would not be
   guilty.
3. Same—Good Faith.—Ky. Stats., 1903, Sec. 2572, provides that
   the person in possession of premises on which liquor is sold
   in violation of law shall be fined, etc. Held, in a prosecution
   against a railroad company for permitting an express com-
   pany having an office in defendant's building to sell liquor in

violation of law, the Commonwealth should not be confined
on the question of the good faith of the express company in
acting in ignorance of the fact that the package delivered by
it contained whisky, etc., to proof of the one transaction
named in the indictment, but should be allowed to show the
manner  in which the business of the office was conducted,
and such other facts as are competent under the rules of evi-
dence, where the question of intent or good faith is involved.

4.  Courts—Previous Decisions by United States Supreme court—
Effect in State Court — Interstate Commerce — Intoxicating
Liquors.—In a prosecution under Ky. Stats., 1903, Sec. 2572,
providing that the person in possession of premises on which
liquor is sold in violation of law shall be fined, etc., where
an interstate shipment is involved, the rules laid down by the
United States Supreme court must control.

J. W. ALCORN, T. D. HARRISON, JR., and BENJAMIN D.
WARFIELD for applicant.   (No briefs in record.)

N. B. HAYS, Attorney General, and C. H. MORRIS for Common-
wealth.

OPINION OF THE COURT BY JUDGE HOBSON—Revers-
ing.

Section 2572, Ky. St. 1903, is in these worls: "The
person in possession of the premises on which liquor
is sold, disposed of, obtained or furnished in violation
or evason of law, by any trick or method whatever,
on conviction, shall be fined not less than twenty nor
more than one hundred dollars for each offense, and
each time such liquor is sold, disposed of or furnished
in violation or evasion of law, shall be deemed a sep-
arate offense under this act against the person in
possession of the premises on which said liquor is
obtained, furnished, or disposed of." The Louisville
& Nashville Railroad Company was indicted under
this statute. The charge in the indictment is that it
unlawfully, and knowingly suffered and permitted the
Adams Express Company and its agent, Bill Sams, to
sell to Robert Ridings from its depot and office in

Pittsburg, in Laurel county, spirituous and malt liquors in quantities of less than five gallons, in violation of the local option law, on premises in its possession and under its occupancy and control. The defendant pleaded not guilty. A trial was had resulting in a judgment against the defendant for a fine of $100, and it appeals.

The facts shown on the trial are as follows: William Sams was the agent of the railroad company and also of the express company at Pittsburg, in Laurel county. He delivered to Robert Ridings a box containing four quarts of whisky, for which he received $3.80. Ridings had not ordered this whisky. He got it from William Sams the agent. His testimony is as follows: Q. What amount of money did you pay him? A. Three dollars and eighty cents. Q. How did you happen to know the whisky was there? A. Why the boxes would just come there in my name, and I would go and get them and pay for them. Q. Did you order this box of whisky that you speak of? A. No, sir. Q. Did you know that it was going to be shipped there to you? A. No, sir; just when one would come in my name I would go and get it and pay for it." On cross-examination he testified as follows: "Q. Do you know how the party who shipped this whisky to you—do you know how he happened to find out there was such a fellow as you? A. I heard there was fellows going through there and getting names of fellows, and shipping whisky to them. Q. Did you ever find a package there that you did not take out? A. He might have sent some back. Q. How was this put up, Mr. Ridings? A. In a square box. I believe it said 'Glass' on the box. Q. Is that all it said? A. I don't remember anything else. Q. Your name was on it? A. Yes, sir; my name was on it. Q. And your

address—'Pittsburg, Kentucky'? A. Yes, sir; I suppose it was. Q. And 'Glass'; and that is all that was on it? A. Yes, sir. Q. Where was it from? A. I don't believe it said on the outside of the box. Q. I am asking where it came from—not what it said? A. On the bottles of whisky it said something about Cincinnati, Ohio. Q. Do you remember the name of the distillery? A. White Oak Distillery Company. Q. First district of Ohio? A. I don't remember about that. Q. Did you ever get any packages out of the depot or express office in Pittsburg that did not contain whisky? A. No, sir; I don't know that I ever did.'' Sams was put on as a witness for the defense, and testified as follows: ''Q. Had you any belief or information as to what the contents were? (Defendant objects. Objection overruled. Defendant excepts.) A. I never gave it any thought. Q. I want to know, Mr. Sams, if you had any belief or information as to what the box contained? (Defendant objects. Objection overruled. Defendant excepts.) Q. Of course, I know you didn't know, because you didn't see in the box; but I want to know if you had any information or belief as to what it contained? A. No, sir; I didn't know. Now, Mr. Sams, I didn't ask you what you knew. I asked if you had any knowledge or information about it. (Defendant objects. Objection overruled. Defendant excepts.) A. I don't know as I did, I never formed any opinion about it. Q. Mr. Sams, how many such boxes as those were handled in the depot at Pittsburg in the 12 months next before the 13th day of July, 1906? About how many? (Defendant objects. Objection overruled. Defendant excepts.) A. I don't know. Q. About how many? A. I don't know. I don't have any idea. We handled several boxes. Q. And didn't you handle several hun-

dred boxes? A. No, sir. Q. How much would be a safe estimate, Mr. Sams? A. I don't know. Q. How do you know there were not several hundred, then? A. Because I know there were not. We handled several boxes, but not several hundred. Q. Do you think there were as many as a hundred? A. Yes, sir. Q. Any more? A. I don't know but what there was. Q. How many would you have in the depot at one time? A. Six or eight, and sometimes not any. Q. How regular would they come there? A. I suppose whenever a man would order them. Q. I suppose that, too; but I want to know how many were kept there regularly in the depot? A. I don't just understand you. Q. How many boxes were kept in the depot regularly? A. I don't know. Q. How often would they come in the year? A. Sometimes every day or every other day. Q. Do you remember any week in the entire year that you didn't get more or less? A. No, sir. Q. You knew you were sending the money back to a whisky house in Cincinnati? A. Yes, sir.''

Pittsburg in Laurel county is a mining town of several hundred inhabitants, and, while the proof in the case is not as full as in the case of Adams Express Company v. Commonwealth, 124 Ky. 182, 92 S. W. 932, 5 L. R. A. (N. S.) 630, 29 Ky. Law Rep. 224, the proof indicates much the same manner of doing business. In Adams Express Company v. Commonwealth, 87 S. W. 1111, 27 Ky. Law Rep. 1096, it was held by this court that whisky was sold where it was delivered and paid for, though it was shipped C. O. D., if there was no order for the whisky and the consignor shipped the whisky to the consignee without his knowledge. But on appeal to the United States Supreme Court of that case it was held that the indictment was not a charge of selling the whisky, and that the

proof that it was sold by the express company to the consignee was immaterial. The court said: ''With reference to the testimony as to the knowledge by the company of the fact that the whisky had not been ordered by the consignee, it is sufficient to say that the averment in the indictment is that the express company was engaged in the business of a common carrier of packages, etc., and that the shipment and delivery were made and done in the usual course of its business. This excludes necessarily the assumption that the transaction was one of sale by the express company at East Bernstadt, and, of course, the company was under no obligation to offer testimony in support of that which the State admitted to be the fact. We do not mean to intimate that an express company may not be engaged in selling liquor in a state contrary to its laws, or that the fact that the consignee did not order a shipment, might not be evidence for a jury to consider upon the question whether the company was not, in addition to its express business, also selling liquor contrary to the statutes. It is enough to hold, as we do, that under the averments of this indictment such testimony is immaterial. It is, of course, a question of fact whether a carrier is confining itself strictly to its business as a carrier, or participating in illegal sales. The consignor alone may be trying to evade the statute. He may forward the liquors in the expectation that the consignee will, when informed of their arrival, take and pay for them. So the fact that there is no previous order by the consignee may not be conclusive of the carrier's wrongdoing, but still it is entitled to consideration in determining that question. Much as we sympathize with the efforts to put a stop to the sales of intoxicating liquors in defiance of the policy of a state, we are not

at liberty to recognize any rule which will nullify or tend to weaken the power vested by the Constitution in Congress over interstate commerce.'' The form of the indictment in the case before us is not such as to make it possible to give it the construction given the indictment in that case. The charge here against the railroad company is that it knowingly suffered the whisky to be sold on its premises. The whisky in contest was sold somewhere. If it was sold on the defendant's premises with its knowledge and consent, it is ordinarily immaterial where it came from, or how it got to the defendant's premises. If a man living in Louisville should take his whisky in his hand, and sell it from the station at Pittsburg with the knowledge and consent of the defendant, it would be liable. It is to the same extent liable if, instead of bringing it there by his own hand, he sent it there, and sold it there by the hand of his agent, the express company. The effect is the same where the whisky comes from a point without the State as where it comes from a point within the State. If this would have been a sale of the whisky at Pittsburg if the whisky had been shipped from Louisville, it is a sale of the whisky at Pittsburg when it was shipped from Cincinnati. Sams, who sold the whisky to Ridings and received the money, was the agent of the railroad company, and as such had posession of the building. He was representative of the railroad company for that purpose. Notice to him was therefore notice to the company.

But the railroad company cannot be fined under the statute for suffering the express company to do what the law authorized it to do. If the express company was authorized by law to deliver the whisky and collect the money for it, then section 2572, Ky. St.

1903, canot be applied to the transaction. When the State showed that the whisky had not been ordered, and that the express company delivered the whisky and collected the money for it in Laurel county where the local option law is in force, it showed a sale there of the whisky. But this showing, as held by the United States Supreme Court, is not conclusive. The defendant may show that the transaction was one of interstate commerce conducted according to the usual course of business, and that the express company in delivering the whisky and collecting the money for it acted in good faith, without knowing or having reasonable grounds to believe that the package it delivered was whisky or had not been ordered, in which event the jury should find the defendant not guilty. Reasonable grounds to believe a fact are such grounds as will induce a person of ordinary prudence under like circumstances to so believe. In Bishop on Statutory Crimes, section 132, the rule is thus stated: "One who, while careful and circumspect, is led into a mistake of facts, and, doing what would be in no way reprehensible were they what he supposes them to be, commits what under the real facts is a violation of a criminal statute, is guilty of no crime, because such is the rule of the common law, and in construction it restricts the statute." Again, in section 1022, it is said: "Where the statute is silent as to the defendant's intent or knowledge, the indictment need not allege or the government's evidence show that he knew the fact. His being misled concerning it is matter for him to set up in defense and prove." These statements of the law are supported by a number of authorities. An illustrative case is Myers v. State, 1 Conn. 502. There a statute was in force punishing the letting of a carriage for the conveyance of per-

sons on Sunday, except for necessity or charity. The defendant was told by the person to whom he hired the carriage that it was needful for charity, and, acting honestly under this impression, let him have the carriage. A conviction was reversed, the court holding that the jury should have been instructed that if the defendant had reasonable grounds to believe from the representations made to him that a case of charity existed, and that if he acted honestly under the impression of that belief, they should find him not guilty. The same principle has been applied in a number of similar cases where the defendant acted honestly, in the regular course of business, under a mistake of fact. But in this class of cases as the statute makes the sale of the whisky in a local option district an offense, when the State shows a sale, it has made out its case, and it is then incumbent upon the defendant to show that it acted in the usual course of business honestly and under a mistake of fact. The defendant must not shut its eyes, but must use ordinary circumspection, and, if the facts before it are sufficient to apprise a person of ordinary prudence of the truth, it cannot escape liability. On the question of the good faith of the express company the Commonwealth should not be confined in the proof to the one transaction named in the indictment, but should be allowed to show the manner in which the business of the office was conducted, and such other facts as are competent under the rules of evidence where the question of intent or good faith is involved.

The instructions of the court were not in accord with the principles laid down by the United States Supreme Court, and, as this was an interstate shipment, the rules announced by that court must control.

Judgment reversed, and cause remanded for a new trial.