## UNITED STATES *v.* CLINE.

*(District Court, W. D. North Carolina. October, 1885.)*

REVENUE LAWS—LICENSE TO RETAIL LIQUORS—SALE TO PERSON AT ANOTHER PLACE.

Where a person who has secured a license to retail liquors at one town receives an order for a certain amount of designated liquors from a person residing at another town or place, and he fills such order by taking or sending the liquor desired to such party, and collects the price therefor at the time of delivery, he is guilty of a violation of the revenue laws prohibiting the sale of liquor without license.[1]

Indictment for Retailing Liquors without a License.

*H. C. Jones,* U. S. Dist. Atty., for the United States.

*R. F. Armfield,* for defendant.

DICK, J., *(charging jury.)* There is no conflict in the evidence, and the credibility of the witnesses has not in any way been assailed, and your verdict should be governed by the instructions of the court upon the questions of law involved. The defendant paid a special tax, and obtained a license which authorized him to retail liquors at his specified place of business in the county of Catawba.

The first witness said that he resides in the town of Denver, in Lincoln county, many miles distant from the place where the defend-

[1] See note at end of case.

ant carried on his business as a retail dealer; that he sent a message to the defendant to send or bring him a gallon of liquor, and that some time afterwards the defendant in person delivered the quantity of liquor ordered, and received payment at Denver. The second witness said that he met the defendant at Denver, and made a contract with him for two gallons of liquor, which were afterwards paid for on delivery by defendant at Denver.

It is insisted by the defendant's counsel that these transactions do not constitute a violation of the statute regarding retail dealers in liquors, as the contract of sale was completed at the defendant's place of business by the measuring and setting apart of the specific quantity of liquors ordered by the purchasers. The doctrines of the common law as to contracts of sale of personal property have been elaborately discussed by counsel, and I will briefly state some of the familiar principles of law on the subject as enunciated by Blackstone, Kent, and other well-known text writers. It is not necessary for me, in this trial, to refer to any of the nice distinctions which have been drawn by judicial minds in applying the law to the peculiar facts and circumstances of decided cases.

Contracts of sale of personal property, at the common law, should be so construed as to ascertain the intention of the parties in regard to the passing of the title of the subject-matter of the agreement. "If a man agrees with another for goods at a certain price, he may not carry them away before he has paid for them, for it is no sale without payment, unless the contrary is expressly agreed." Where a sale is proposed by a vendor, and the offer is accepted by the vendee, "the bargain is struck;" but if, by the express terms of the contract, anything remains to be done by the vendor before delivery, or the delivery is to be made at a future day, and at a different place, on the payment of the price agreed upon, a complete present right of property is not vested in the vendee. The contract is, however, obligatory, and if either party fails or refuses to comply with his agreement, he is responsible in damages, if the other party is ready and willing to perform his part of the contract. When the terms of the bargain have been agreed on, and everything that the vendor has to do with the goods to put them in a condition for immediate delivery, the sale is absolute, without actual payment or delivery, so that the property is in the vendee, and the goods are at his risk as to accident and damage. The vendee is not entitled to the *possession* until he pays or tenders the price, or gets a future day for payment, for the vendor has a *lien* on the property for the price, and only payment or tender of payment gives the vendee a *right of possession*. If the vendee tenders the price to the vendor, and he refuses it, the vendee may seize the goods or have an action for obtaining them.

When specific goods are sold on a credit, and there is no agreement as to the time of delivery, the vendee is entitled to immediate possession, and the right of property at once vests in him. If goods

bargained for constitute only a part of a stock or larger quantity of the same kind, a title to the goods sold does not pass to the purchaser until they are set apart and designated as his portion. If the purchaser has paid for a certain quantity of goods in bulk, and has agreed to be present, and have the goods set apart and ascertained and delivered on or before a certain day, and he fails to comply with this agreement, the goods contracted for remain at his risk of damage and accident. It is not necessary for a vendor and vendee to come together in order to complete a sale of personal property and a transfer of the title. This can be done by the intervention of agents, or by means of written correspondence. If an agent negotiates a purchase in the name of his principal, the transaction has all the elements of a contract made by the principal. If a proposition of purchase is made by letter, and is accepted by a vendor, and he delivers the article purchased to a common carrier as directed by the purchaser, such delivery completes the contract of sale, and transfers title, without payment of the price, as the common carrier is the agent of the purchaser, and the vendor only has the right of stoppage *in transitu* if the purchaser is ascertained to be insolvent. If a vendor delivers an article ordered to a common carrier, marked "C. O. D.," and directed to an intended purchaser, the contract of sale is completed at the place of delivery to the purchaser on the payment of the price, as the common carrier is the agent of the vendor for the purposes expressed, and the ownership of the property set apart for the purchaser does not pass to him until he pays the price. This principle of law was applied by me in this court several years ago in the trial of the case of *U. S.* v. *Williams*, and I am informed that the commissioner of internal revenue has so ruled in the collection of special taxes from dealers in liquors.

After this brief statement of a few well-settled principles of law, I will proceed to apply some of them to the facts which you have to consider in making up your verdict in this case. The provisions of the internal revenue laws relating to dealers in liquors seem to contemplate that the contract of sale shall be consummated in the place specified in the license granted, on the payment of the special tax; and that the liquor sold shall be delivered to the purchaser or his agent, on the payment of the price, or on an expressly agreed credit. All the rights of ownership must at once pass from the seller to the purchaser. A retailer's acquired privilege is limited to carrying on his business at a certain place, where all of his transactions are subject to frequent official inspection, and he can have but few opportunities of evading the law.

If the messenger of the first witness had been an agent for the purchase of the liquor from the defendant, and had paid the money, and had the liquor measured, and set apart in a vessel for the purchaser, the contract of sale would have been completed at the defendant's place of business, and he would have been in possession of the

property as a bailee, and his subsequent delivery to the purchaser in Denver would not have been a violation of law. The messenger had no such authority, but only communicated the order of the intended purchaser as to a transaction to be completed at a future time and a different place. The property in the liquor remained in the defendant, and the contract of sale was not completed until the liquor was delivered and paid for at Denver. The testimony of the second witness shows that his contract of purchase was commenced and completed at Denver. If you believe the uncontradicted testimony of the witnesses, you should return a verdict of guilty against the defendant.

NOTE.

A party who has paid a special tax, as a retail liquor dealer, at a particular town, who fills orders received by mail to ship liquors in retail quantities to another town, there to be delivered to the party so ordering upon payment of the price of the liquor, together with the express charges, is liable to the payment of a special tax as a retail liquor dealer at the place where such delivery is made. U. S. v. Shriver, 23 Fed. Rep. 134.

It was recently held by the supreme court of Vermont, in the case of State v. Four Jugs of Intoxicating Liquors, 2 Atl. Rep. 586, that where a liquor merchant in New York received an order for certain quantities of specified liquors from a retail dealer residing in Vermont, and he delivered the liquors ordered to an express company in New York, to be transferred to the retail dealer in Vermont, with instructions to collect the price and charges on delivery, that the merchant thereby made the express company his agent for the purpose of completing the sale and delivering the goods, and that the sale was made where the title to the goods was delivered,—in Vermont.

The supreme court of Wisconsin held in the case of Sarbecker v. State, 26 N. W. Rep. 541, that when the contract is silent on the subject, and there is nothing in the transaction indicating a different intention, and a manufacturer residing in one city receives, through his agent residing in another, an order for beer from a customer there, and fills the order by delivering the beer to a common carrier at the place of manufacture, consigned to such customer at his place of residence, or to such agent for him, the sale is complete, and the title passes at the place of shipment, even though the customer, on receiving the beer at his place of residence, pays to such agent there the purchase price; and the absence of a license to sell liquors in the county where the purchaser resided will not render the agent liable for selling without obtaining a license there. The court cite Fragano v. Long, 4 Barn. & C. 219; Ranney v. Higby, 4 Wis. 154; Somers v. McLaughlin, (Wis.) 15 N. W. Rep. 442; Com. v. Farnum, 114 Mass. 267; Janney v. Sleeper, (Minn.) 16 N. W. Rep. 365; City of Kansas v. Collins, (Kan.) 8 Pac. Rep. 865. The court say: "The same principle has frequently been applied, in the sale of liquors, to a purchaser residing in a place where all such sales, or all such sales without license, were prohibited;" citing Garbracht v. Com., 96 Pa. St. 449; Finch v. Mansfield, 97 Mass. 89; Abberger v. Marrin, 102 Mass. 70; Brockway v. Maloney, 102 Mass. 308; Dolan v. Green, 110 Mass. 322; Frank v. Hoey, 128 Mass. 263; Hill v. Spear, 50 N. H. 253; Tegler v. Shipman, 33 Iowa, 194; Boothby v. Plaisted, 51 N. H. 436; Shuenfeldt v. Junkerman, 20 Fed. Rep. 357.

In Boothby v. Plaisted, 51 N. H. 436, the defendant ordered, by sample, spirituous liquors of the traveling agent of a firm in another state where the sale was lawful, and they were put up, marked to purchaser, and shipped from the firm's place of business. It was held that the sale was made and the contract complete at the place of shipment, and that an action for the price could be maintained in New Hampshire, where such sale was unlawful. To same effect are Hill v. Spear, 50 N. H. 253, and Tegler v. Shipman, 33 Iowa, 194.

But in Webber v. Howe, 36 Mich. 150, where a liquor dealer from Ohio in person solicited and received in Michigan an order for liquors, which were afterwards shipped in Ohio, and delivered to the vendee in Michigan, it was held to be a sale in Michigan. Judge Cooley says: "Had the order been sent from this state to dealers in Ohio, and filled there, or had an agent of the Ohio parties, who had no authority to agree upon sales, taken the order in this state, and transmitted it to his principals, who accepted and filled it," the sale would have been completed in Ohio; citing McIntyre v. Parks, 3 Metc. 207; Orcutt v. Nelson, 1 Gray, 536; Garland v. Lane, 46 N. H. 245; Kling v. Fries, 33 Mich. 275. See, to same effect, Hausman v. Nye, 62 Ind. 485; Keiwert v. Meyer, 62 Ind. 587.