### UNITED STATES v. CHEVALLIER.

#### (Circuit Court of Appeals, Ninth Circuit. February 4, 1901.)

#### No. 633.

INTERNAL REVENUE—WHOLESALE LIQUOR DEALER—BRANCH HOUSE—TAXATION AS SEPARATE BUSINESS.

Defendant, a wholesale liquor dealer in San Francisco, maintained a branch house in Portland, bearing his sign, and where presumably samples of his trade were kept, and where the public were invited to purchase. The manager thereof was a "salesman" who was required to sell judiciously, the right to cancel his contracts being reserved to his principal, who filled all orders, and, without prepaying the freight, delivered the goods to a carrier at San Francisco, consigned to purchasers in various parts of the agent's territory. *Held*, that the sales were made wholly at San Francisco, notwithstanding the agent may have been authorized to make binding contracts and collected the purchase money, and defendant was not subject, under Rev. St. § 3244, subd. 4, to the internal revenue tax, as an Oregon liquor dealer, though his method of transacting business may have been devised purposely to evade such tax.

In Error to the Circuit Court of the United States for the District of Oregon.

It is sought by the writ of error in this case to review the judgment of the circuit court (102 Fed. 125) in an action instituted by the United States against George F. Chevallier, doing business under the firm name of F. Chevallier & Co., to recover special revenue tax as both wholesale and retail liquor dealer, which business it was alleged was carried on in the city of Portland, in Oregon, in violation of subdivision 4 of section 3244 of the Revised Statutes. The defendant in error, by his answer, denied that he was carrying on the business of either retail or wholesale dealer in liquors within the state of Oregon, and set out, in a further and separate answer, that he was carrying on the business of wholesale and retail liquor dealer in San Francisco, state of California, and had paid a special tax therefor; that he had a branch office in the city of Portland, over the door of which was painted the sign, "F. Chevallier & Co., W. H. Fiske, Manager," where he kept no wines or liquors for sale, but where his agent received conditional orders for wines and liquors, and forwarded the same to the defendant's house in San Francisco, there to be approved and filled, and that upon such approval by the defendant the goods ordered were shipped from the San Francisco house directly to the purchaser in Oregon or elsewhere at the risk of the purchaser; that the said Fiske, as manager, had no authority from the defendant to make any sale of or offer for sale any wines or liquors in the city of Portland or elsewhere in the district of Oregon; that all such sales were completed and made in the state of California. The answer admitted that the said agent received as his compensation for such services a commission on the amount of sales made by the defendant in San Francisco upon such orders, and was authorized to receive from the defendant's customers in Oregon in

certain instances the purchase price of wines and liquors so sold, and in some cases did receive such purchase price, and accounted for and forwarded the same to the defendant in San Francisco, and that the agent kept an account of all moneys so received and disbursed by him, and a duplicate copy of the record of such sales made by the defendant in San Francisco, and that for that purpose defendant employed a clerk to aid·the agent at his office at Portland, Or. This answer was demurred to upon the ground that the matters pleaded and set forth therein are insufficient to constitute a defense to the complaint, and on the submission of the demurrer it was agreed that the agreement between the defendant and his agent, under which the agency was conducted, might be*considered by the court as if it were set forth in the answer. The agreement contains, among others, the following provision: "That, in order to better carry on their business in the states of Oregon, Washington, Idaho, and Montana, the first parties hereby employ the second party in the double capacity of salesman and manager of the office which the first parties will maintain within the territory just mentioned. As salesman, the second party agrees to sell for the first parties judiciously, and to the best of his ability, any and all articles in their line of which the first parties may furnish him a list, at prices and on terms to be specified by them, and over any and all such territory as is included in the states of Oregon, Idaho, Washington, and Montana. The second party shall submit all orders to the judgment of the first parties, and shall abide by their decisions regarding the propriety of filling or rejecting any or all such orders. He shall also use due diligence in forwarding the interests of the first parties, making trips or traveling over the described territory as often as the first parties may consider necessary for the welfare of the business." The agreement makes further provision concerning the management of the business, employment of clerks, repair of fixtures and office furniture, and contains the following: "The first parties will allow the second party a gross commission of 24% on all bona fide sales of such merchandise as they carry regularly in stock, effected within the described territory."

John H. Hall, U. S. Atty.

Mitchell & Tanner, E. Mendenhall, and Riordan & Lande, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Since the contract was offered to the court as part of the defendant's defense, and for the purpose of showing the exact nature of his dealings with his agent, the averments of the answer may be construed with reference to it, and consideration of the demurrer may be confined to the facts which are disclosed by the contract, aided by such portions of the answer as are necessary to explain its meaning. Briefly, then, the facts disclosed in defense of the action are that the defendant in error maintained a branch house in Oregon, a place which bore his sign, and where presumably samples of his wines and liquors were kept, and where the public were invited to purchase. The manager at Portland was a "salesman." He was authorized to sell, and he was required to sell, judiciously, but the right to cancel his contracts was reserved to the defendant in error, who filled all orders, and delivered the ordered goods to a carrier at San Francisco, and consigned them to the purchasers in Oregon. Under this state of facts, were the liquors sold or offered for sale in Oregon, or were they sold and offered for sale in San Francisco? It may be conceded

that in selling specific goods the place of sale is the place where a binding contract for their disposal is entered into, although the property itself may be situated elsewhere. But the sales in this instance were not sales of specific articles. They were sales of goods carried in stock. No sale was or could be complete until the goods were separated from the goods in stock and delivered to the carrier. This was the last act to consummate the sales, and it was done in San Francisco. When the goods were thus segregated and placed in charge of the carrier, to be transported to the purchasers, the right of the vendor over them ceased, and that of the purchaser began. It is immaterial, therefore, whether the authority of the agent in Portland was limited to the power to receive and transmit orders, or was broad enough to include the power to make a binding contract of sale. Nor is it material that he collected the purchase money on sales so made. In Abberger v. Marrin, 102 Mass. 70, the court said: "As between vendor and vendee, title to specific personal property passes by the contract of sale. But, where the sale is of goods generally, no property in them passes till delivery, because until then the very goods sold are not ascertained." It is true that in Taylor v. Pickett, 52 Iowa, 467, 3 N. W. 514, it was held that where an agent sells liquors, and sends to his principal a statement of the sale, for the latter to fill by forwarding to the purchaser the liquors specified, the sale is made where the agent resides; but we find no support elsewhere for that doctrine. The current of authority is that, even in a case where the sale is made by the owner of the goods in person at a place other than that in which the goods are situated, the sale is not completed until the property is actually separated from the stock in the store, and delivered to the carrier, and that the place of such delivery is the place of sale. Dolan v. Green, 110 Mass. 322; Abberger v. Marrin, 102 Mass. 70; Webber v. Howe, 36 Mich. 150; Sortwell v. Hughes, 1 Curt. 244, Fed. Cas. No. 13,177. See, also, Garbracht v. Com., 96 Pa. 449; Woolsey v. Bailey, 27 N. H. 217; Sarbecker v. State, 65 Wis. 171, 26 N. W. 541; Gross v. Scarr, 71 Iowa, 656, 33 N. W. 223. A different case would have been presented if it had been shown that instead of sending the goods to the purchasers by a common carrier, the freight to be paid by the purchasers, the vendor had paid the freight charges, or had sent the goods by express, to be paid for on delivery from the express company, or had consigned them to his agent, to be by him delivered to the purchasers. Weil v. Golden, 141 Mass. 364, 6 N. E. 229; State v. O'Neil, 58 Vt. 140, 2 Atl. 586; U. S. v. Shriver (D. C.) 23 Fed. 134; U. S. v. Cline (D. C.) 26 Fed. 515; Com. v. Eggleston, 128 Mass. 408; Com. v. Shurn, 145 Mass. 150, 13 N. E. 395.

Nor do we think that the defendant by maintaining his office at Portland under the contract has there "offered" wines and liquors for sale, within the meaning of the statute. Goods are offered for sale at the place where they are kept for sale and where a sale may be effected. They are not offered for sale elsewhere, by sending abroad an agent with samples or by establishing an office for the purpose of taking orders. It must be held that the offer to sell in this case is an offer to sell at the place where sales are in fact made, and at the

only place where they are made, which is in San Francisco. It may be true, as suggested by counsel for the plaintiff in error, that the method of transacting the business of the defendant in error in Oregon has been devised with the view of evading the payment of the special tax, and that by establishing his branch office in Portland he there enters into competition with wholesale dealers who are required to pay the special tax, and that thereby the revenues which otherwise would accrue to the government are diminished. These considerations suggest, perhaps, reasons why the statute should be altered to meet such a case as is here presented. We find no remedy for it in the plain intendment of the existing statute. The judgment of the circuit court will be affirmed.