# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### JONES v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. March 12, 1909.)

#### No. 875.

INTERNAL REVENUE (§ 40*)—VIOLATION OF REVENUE LAWS—PLACE OF SALE OF LIQUOR.

A retail liquor dealer who has his internal revenue tax paid stamp duly posted in his place of business is not subject to prosecution for carrying on business without paying the special tax therefor because of the shipment of a quantity of liquor from his stock on an order received by mail by an express company C. O. D. to the purchaser at another place. In such case the sale is completed, and the property passes when the goods are delivered to the carrier; the collection and transmission of the price being merely an incident of the express business.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 40.*]

Pritchard, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Northern District of West Virginia, at Clarksburg.

Melvin G. Sperry, for plaintiff in error.

Reese Blizzard, U. S. Atty., and E. M. Showalter, Asst. U. S. Atty.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

BOYD, District Judge. Charles H. Jones, the plaintiff in error, the defendant below, was indicted jointly with one J. R. Hickman (the two composing the firm of Jones & Hickman) on the charge of carrying on the business of retail liquor dealer without payment of the special tax imposed by law. Section 3242a, Rev. St. (U. S. Comp. St. 1901, p. 2095). Jones was tried separately on this indictment at Clarksburg, in the Northern District of West Virginia, at the October term, 1908, of the United States District Court for said District, was convicted by the jury, and was sentenced by the court to pay a fine of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

170 F.—1

$100 and to be imprisoned in a jail for 30 days. The case is before us on a writ of error to review the action of the trial court in refusing to instruct the jury as requested by the defendant, and also upon exception to instructions given by the court to the jury.

The case went to the jury on the facts disclosed by the testimony offered by the government (the defendant did not introduce any testimony); the said facts being in substance as follows:

The firm of Jones & Hickman (composed of C. H. Jones and J. R. Hickman) was a retail liquor dealer in Clarksburg, W. Va., in the year 1905. The said firm had its located place of business at Clarksburg, and it had paid for, procured, and had posted in said place the special tax stamp required by the internal revenue laws of the United States, and the said stamp covered the time of the sale hereinafter mentioned. That in or about the month of December, 1905, one L. T. Horton, residing at Grafton, W. Va., sent a written order by mail addressed to Jones & Hickman at Clarksburg, W. Va., directing the said firm to ship him (Horton) at Grafton a half gallon of whisky by express C. O. D.; the price of the whisky being $2. In response to this order, Jones & Hickman segregated from the stock in their place of business at Clarksburg the half gallon of whisky so ordered, put it in a package, and delivered it to the express company's agent at Clarksburg, consigned to L. T. Horton, Grafton, W. Va., C. O. D. The package reached Grafton in due course, and was there delivered by the express agent to Horton upon the payment of $2, the price of the whisky, and the express charges for freight; and the $2, the price of the whisky, was thereafter remitted by the express company to Jones & Hickman at Clarksburg.

Upon this state of facts the defendant moved the court to charge the jury as follows:

"That the shipment of liquor made by the defendant from his place at Clarksburg, in Harrison county, to the town of Grafton, in Taylor county, by the United States Express Company C. O. D., and upon the written order of the purchaser living at Grafton, directing the same to be so shipped, was a sale at Clarksburg at the storehouse or saloon of the defendant, and not a sale at Grafton. * * *"

The court refused to give the instruction, to which defendant's counsel excepted. The court then charged the jury as follows:

"Gentlemen, the court instructs you: That a sale involves at least three elements: First, on the part of the purchaser, a consent to buy; second, on the part of the seller a consent to sell; third, the delivery of the article; and ordinarily, fourth, the payment of the purchase price, and that all of those elements enter into a sale. That a whisky seller who has license to sell in Clarksburg and receives an order can send it to the person who orders it in the ordinary course of business and run the risk of the man's paying, in the ordinary course of business, but, if he sends it C. O. D.—in other words, makes of the express agent his agent to complete that sale and deliver it in case it is paid for at Grafton—that then he is guilty of selling at Grafton, and not at Clarksburg."

To this instruction as given by the court the defendant's counsel then and there duly excepted. The assignments of error are based upon bills of exception as above.

There is but a single question presented in this case, and that is whether the transaction detailed constituted a sale of liquor at Grafton. In other words, whether Jones & Hickman, who were doing a lawful business as retail liquor dealer in Clarksburg, violated the law by taking a half gallon of whisky from the stock in their place of business and delivering it to the express company at Clarksburg for shipment upon Horton's order to him at Grafton C. O. D. The disposition of this question rests entirely upon where the sale was made. Was it made at Clarksburg when the liquor was taken from the stock of the dealer in its lawful place of business as ordered by Horton, or at Grafton where Horton received the package and paid to the express agent the amount of the C. O. D. and the express charges for carriage? It is insisted by the United States attorney in his argument (by brief) that the sale to Horton was not consummated at Clarksburg, that the contract was not completed until the package of liquor reached Grafton, and was there delivered to the purchaser upon the payment by him of the price. It is true that, under local prohibitory laws of some of the states, the place of delivery of spirituous liquors has been made the place of sale, and the courts of these states have upheld these laws, but aside from these we have found no declaration to that effect from any source which we consider sufficiently authoritative to bind us. In our opinion the bargain was struck and the sale was completed at Clarksburg. The defendant's firm received Horton's letter, in which he ordered the liquor, stated the price, directed the manner of shipment and the method of payment. By the terms of the order the sale was consummated at the place of business in Clarksburg, and the express company was constituted the agent of the purchaser to transport the article purchased, and to receive and remit to the seller the price. We find this view of transactions of the character involved here very forcibly presented in a number of decisions by the Supreme Court of the state of West Virginia, notably in the case of State v. Flanagan, 38 W. Va. 53, 17 S. E. 792, 22 L. R. A. 430, 45 Am. St. Rep. 826, in which the court held:

"A licensed liquor dealer doing business as such in one county is not liable to indictment in another county for retailing liquors therein without a license where he shipped by express C. O. D. to a person in the latter county a package of whisky, as per his order by postal card, sent through the mail, and which was received in the former county. Such facts show that the sale was made in the former county, and not in the latter."

And also in the case of State v. Davis, 62 W. Va. 500, 60 S. E. 584, 14 L. R. A. (N. S.) 1142, decided by the Supreme Court of Appeals of West Virginia in November, 1907, from which we quote as follows:

"A sale by a retail dealer in intoxicating liquors, in which delivery is made within the town or county in which he has a license, in fulfillment of an order received and accepted at the place of business designated in his license from his stock of goods kept in that place, is deemed by the law a sale at the place of business, and not a sale at the place of delivery, unless it appears that the place of delivery was agreed upon as the place of sale."

The principle is also fully sustained in a leading Pennsylvania case. Commonwealth v. Fleming, 130 Pa. 138, 18 Atl. 622, 5 L. R. A. 470,

17 Am. St. Rep. 763. In the opinion in that case our view is distinctly stated in the following language:

"Where a purchaser orders goods sent him C. O. D. and the order is accepted by the seller, and goods delivered to the carrier, the sale on the part of the seller is complete. When the purchaser orders goods sent him C. O. D. and the order is accepted by the seller and the goods delivered to the carrier, the latter becomes the agent for the receipt and transmission of the price. The sale is complete on the part of the seller. And, whether the carrier receives the price or not at the time of delivery, he is liable to the seller for the price. A licensed liquor dealer who receives an order from a purchaser residing in another county where the dealer has no license to send him liquor C. O. D., and accepts the order and delivers the liquor to a carrier under agreement to collect on delivery, cannot be convicted of selling liquor without a license in the county where the purchaser resides, as the sale is complete on the part of the dealer when he delivers the liquor to the carrier at his place of business."

In the case of the United States v. Lackey (C. C.) 120 Fed. 577, Judge McDowell, of the Western District of Virginia, held that, where "a licensed liquor seller received orders from customers living in a place where he was not authorized to sell, and filled such orders by. separating the liquor from his stock in his place of business, and delivering the packages, marked with the customers' names, to a private carrier, to be carried to the customers and to be delivered at their places of residence on payment of the price, under such circumstances the sales were completed in the seller's place of business. where he was licensed to sell." State decisions almost without number could be collected sustaining the general proposition that upon an order for goods to be shipped by the vendor to the vendee the sale is complete when such goods are delivered to the carrier. In the case of Ober & Sons. v. Smith, 78 N. C. 313 (reprint 274), the Supreme Court of that state, Faircloth, J., delivering the opinion, holds that:

"As soon as an order for goods is accepted by the vendor, the contract is: completed without further notice to the vendee; and such contract is fully performed on part of vendor by delivery of the goods in good condition to the proper carrier. A delivery to a carrier designated by the vendee is of the same legal effect as a delivery to the vendee himself."

And in Gwyn v. Railway Company, 85 N. C. 429, 39 Am. Rep. 708, Chief Justice Smith delivering the opinion of the court, it is decided that the sale of a specific chattel by words "in præsenti" transfers the vendor's title to the vendee with a right to retain possession until the purchase money is paid, in the absence of any contrary intent expressed or implied. In this last case the court cites with approval Ober v. Smith, supra. In another case, that of the Norfolk Southern Railway v. Barnes, 104 N. C. 25, 10 S. E. 83, 5 L. R. A. 611, Shepherd, J., delivering the opinion of the court, it is held that where a buggy was sold by A. to B., and delivered to a carrier by the vendor to be delivered to the vendee upon the payment of the price, as soon as the vehicle was delivered to the carrier, the right of property passed to the vendee, and the right of possession remained in the vendor until the price was paid. And the same doctrine is reiterated in Bank v. Miller, 106 N. C. 347, 11 S. E. 321. And the doctrine is also laid down as a general principle in both Benjamin and Hilliard on Sales.

We do not need to further cite declarations of the local courts to support the principle involved. The question, however, we are considering has not been directly before the Supreme Court of the United States, and therefore we have not the benefit of a decision of that court. There are several decisions, however, of the Supreme Court under the interstate commerce act in which the reasoning employed tends strongly to fortify the view we entertain. Notably the case of the American Express Company v. Iowa, 196 U. S. 133, 25 Sup. Ct. 182, 49 L. Ed. 417. The transaction involved in that case was a shipment by the American Express Company of four packages of intoxicating liquors from Rock Island, Ill., to Tama, Iowa, C. O. D., $3 to be collected on each package and 35 cents for carriage on each. These packages upon their arrival at Tama were seized in the hands of the express agent by the state authorities on the ground that they contained intoxicating liquor held by the express company for sale. The Supreme Court of the state of Iowa held that the seizure was legal, but upon writ of error the Supreme Court of the United States reversed that judgment. In that case reference is made to the case of Caldwell v. North Carolina, 187 U. S. 622, 23 Sup. Ct. 229, 47 L. Ed. 336. This was a case in which Caldwell was representing a Chicago company, which shipped pictures and frames to Greensboro, N. C., upon order. At Greensboro the company had this agent, who received the merchandise, put the pictures and frames together, and delivered them to the purchasers who had ordered them from Chicago. The state authorities sought to collect a tax from Caldwell, the agent, as a dealer in North Carolina. The Supreme Court held that he was not liable.

In the opinion in that case the court says:

"It would seem evident that if the vendor had sent the articles by an express company, which should collect on delivery, such a mode of delivery would not have subjected the transaction to state taxation. The same could be said if the vendor himself or by a personal agent had carried and delivered the goods to the purchaser."

When the Supreme Court declared that, if these goods shipped to Greensboro had been sent C. O. D., the transaction would have not been subject to state taxation, what did it mean? The court certainly did not intend to declare that, under the authority vested in Congress to regulate interstate commerce, legislation could be enacted which would deprive the state of North Carolina of its power to levy a tax upon sales of specific articles made within the limits of the state, nor can we believe that when the court held that a C. O. D. express package delivered to the vendee by the carrier, at the place of destination, could not be made the subject of taxation by the state in which the point of delivery was located as a sale in such state, the law still remained that such a delivery constitutes a sale at the place of destination which would subject the transaction to a tax on the part of the United States. It seems to us to follow, therefore, that what the court did intend to say was that where orders were sent from Greensboro to the Chicago concern directing the shipment of certain goods to the person sending the order, and the Chicago con-

cern did ship in obedience to the order and sent the goods by express to Greensboro C. O. D., the transaction was consummated in Chicago, and was therefore not taxable as a sale in North Carolina.

The case of the Norfolk & Western Railway Company v. Sims, 191 U. S. 441, 24 Sup. Ct. 151, 48 L. Ed. 254, is a case altogether in line with the Caldwell Case in support of the position we take. In this last case a resident of North Carolina ordered from a corporation in Chicago a sewing machine. The machine was shipped under a bill of lading to the order of the buyer, but this bill of lading was sent to the express agent at the point of delivery in North Carolina, with instructions to surrender the bill on payment of a C. O. D. charge. The contention was that the consummation of the transaction by the express agent in transferring the bill of lading upon payment of the C. O. D. charge was a sale of the machine in North Carolina, which subjected the company to a license tax. The contention was held untenable, and the contract of sale held to be completed in Chicago. Also in the case of the Adams Express Company v. Kentucky, reported in 206 U. S. 129, 27 Sup. Ct. 606, 51 L. Ed. 987, it is held that:

"A statute of Kentucky, making penal all shipments of liquor 'to be paid for on delivery, commonly called C. O. D. shipments,' and further providing that the place where the money is paid or the goods delivered shall be deemed to be the place of sale, and that the carrier and his agent delivering the goods shall be jointly liable with the vendor, is as applied to shipment from one state to another an attempt to regulate interstate commerce, and beyond the power of the state."

It is true that these decisions we have cited by the Supreme Court of the United States were rendered in construing and applying the interstate commerce act, and yet we must conclude that, if the Supreme Court entertained the opinion that a package of goods sent by express C. O. D. in obedience to an order from the consignee to the shipper that such a transaction did not constitute a sale until the package reached its destination and was delivered to the consignee upon the payment of the C. O. D. charges, these decisions would have contained some expression to that effect. On the contrary, however, the court especially in the case last cited, indirectly at least, discusses the proposition we have in the case before us. In the Kentucky case the state alleged that the liquor was being shipped into the state by the express company, and that the alleged consignee did not order the goods. In regard to this the Supreme Court, Mr. Justice Brewer delivering the opinion, says:

"We do not mean to intimate that an express company may not also be engaged in selling liquor in a state contrary to its laws, or that the fact that the consignee did not order a shipment might not be evidence for a jury to consider upon the question whether the company was not, in addition to its express business, also selling liquor contrary to the statutes."

We understand from this language that, where a bona fide order had been sent and the goods shipped in response to it, that completed the transaction so far as the sale was concerned. But, if the express company without orders carried the goods and delivered them, that such might be shown as tending to prove that the company itself was the dealer, and the sale was made by the express company to the person

to whom it delivered the goods. The expressions of the Supreme Court which we have quoted discredit the suggestion that a C. O. D. package regularly sent upon a bona fide order is sold at the place of delivery. If such were the law, not only would the legal dealer in liquor who delivered his goods upon order to a carrier for shipment to a point other than his place of business be guilty, but the carrier's agent, who is the instrumentality for the delivery of the liquor and the receipt of the price, at the place of the destination would also be guilty of a violation of the law. We cannot construe the law so as to lead to such a result. In our case the express company acted simply as a common carrier, transported the package of liquor from Clarksburg to Grafton, there to be delivered to the purchaser; the collection of the C. O. D. charges and the transmission of the money to the seller being a mere incident of the express business. We may say as a general proposition that actual delivery of a chattel is not in all cases necessary to the consummation of a sale. The mutual assent of the parties to the contract that the property in the chattel is to pass from the seller to the buyer for the money or price offered constitutes a sale at common law. Therefore, when the defendant's firm received Horton's order at Clarksburg where a legal business was being conducted by his firm as a retail liquor dealer and the spirits ordered by Horton were separated from the stock, packed and delivered to the express agent, the sale was completed, and, as stated above, the express company was the agent of the purchaser to carry the spirits, deliver them to Horton, receive the price, and transmit it to the seller.

Mr. Benjamin in his work on Sales, § 362, discussing this proposition, cites as authority the case of Dutton v. Solomonson, 3 Bos. & P. 582, which says:

"It was treated as already settled law that, where a vendor delivered goods to a carrier by order of the purchaser, the appropriation is determined, the delivery to the carrier is a delivery to the vendee, and the property vests immediately."

We conclude, therefore, that the District Court was in error in its refusal to give the defendant's prayer for instruction to the jury, and also in error in the instruction as given by the court to the jury.

The judgment of the District Court is therefore reversed.

PRITCHARD, Circuit Judge (dissenting). I cannot concur in the conclusion reached by a majority of the court in this case. The question involved here is within a narrow compass, but it is far reaching in importance and demands serious consideration.

It appears from the record that the plaintiff in error was engaged in business at Clarksburg, in the state of West Virginia. It also appears that the town of Grafton, in that state, is situated some distance from the city of Clarksburg. It also appears that one T. L. Horton, residing at Grafton, ordered by letter addressed to Hickman & Jones and mailed to them at their place of business at Clarksburg one-half gallon of whisky. In the letter the purchaser informed Hickman & Jones of the quantity of liquor desired, the price to be paid

for the same, and directed them to ship it to him at Grafton, W. Va., C. O. D. The plaintiff in error was indicted as a member of said firm. While it does not affirmatively appear that prohibition obtains in the town of Grafton, yet it may be inferred from the facts and circumstances as shown by the testimony of the witnesses in the court below that the sale of liquor is prohibited in that town either by local option or statute. Although this fact is not material in determining the guilt or innocence of the accused, yet it is pertinent to the question as to whether the federal courts in the enforcement of laws enacted by Congress should take into consideration the existence of local statutes designed for the punishment of those charged with kindred offenses. Sales of this character, as a general rule, are made to parties residing in territories where the sale of liquor is prohibited, and, if the contention of the plaintiff in error be correct, the enforcement of prohibition laws would be well nigh impossible, and the government would be deprived of the license tax to which it is entitled under the internal revenue laws. It is within the common knowledge of all, and the courts will take judicial notice of the fact, that several states, as well as towns, cities, and counties, have adopted laws prohibiting the sale and manufacture of spirituous liquors. That the Legislatures of the various states have the power to enact laws of this kind is unquestioned. Such enactments are intended to promote the welfare of the people residing in the communities affected thereby. It is a matter of common knowledge that in many instances laws thus enacted by the state are violated by individuals who resort to various kinds of subterfuge. In considering this question, the inquiry naturally arises as to whether the will of the state Legislature in this respect is to prevail, and also as to whether the federal courts in the administration of the internal revenue laws will, as far as possible, aid in making the state statutes effective. I think it is the duty of a federal court in cases like this to do all it can, without overstepping the law, to aid the states in the enforcement of laws enacted for the manifest purpose of maintaining law and order.

As an evidence that Congress is inclined to aid as far as possible in the enforcement of the prohibition laws of the various states in so far as interstate commerce transactions are concerned. I call attention to section 239 of Public Act No. 350, to codify, revise, and amend the penal laws of the United States, passed at the recent session.

The section in question reads as follows:

"Sec. 239. Any railroad company, express company, or common carrier, or any other person who, in connection with the transportation of any spirituous, vinous, malted, fermented, or other intoxicating liquor of any kind from one state, territory, or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, into any other state, territory or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country into any state. territory or district of the United States, or place noncontiguous to but subject to the jurisdiction thereof, shall collect the purchase price or any part thereof, before, on, or after delivery, from the consignee, or from any other person, or shall in any manner act as the agent of the buyer or seller of any such liquor, for the purpose of buying or selling or completing the sale thereof, save only in the actual transportation and delivery of the same, shall be fined not more than five thousand dollars."

However, this law, having been enacted subsequent to the commission of the offense charged in the indictment and intended to apply only to cases where interstate shipments are made, can have no bearing upon the question sought to be determined by this writ of error, and is therefore quoted solely with the view of showing the policy of Congress in respect to this question. In this case the plaintiff in error was a licensed dealer in a territory where the sale of spirituous liquors was authorized by the laws of the state, and under these circumstances he had a perfect right at his place of business to sell to any one he pleased, but even in that territory he was not authorized to make a sale at a place other than his place of business. On payment of the special tax, the government issued a receipt to the defendant in error for the same, which designated the place of business at which he was authorized to make sales, and it has been repeatedly held that to sell at any other place would render him liable to indictment under the federal statute. Thus it will be seen that the federal statute in this respect is very rigid, and anything short of a strict compliance with the requirements contained in such receipt subjects the dealer to a heavy penalty upon conviction.

The only question to be determined is as to whether the shipment in this instance to Horton at Grafton C. O. D. constitutes a sale at that place, and, in order to correctly determine this point, it becomes necessary to ascertain what it takes to constitute a sale of personal property. In the case of Robinson v. Hirschfelder, 59 Ala. 503–506, it was held:

"That an agreement to sell does not become a sale if any term in which the seller must co-operate, or which imposes a liability or duty on him, remains to be performed, such as weighing, measuring, inspecting, and transporting goods to another place, to be there delivered and received. Things not in esse, actual or potential, cannot be the subject of sale."

Also the Supreme Court of Arkansas in the case of Berger v. State, 50 Ark. 20, 6 S. W. 15, among other things, said:

"Defendant was located in a nonliquor license town. An order for liquor was left with him, and he sent it to a licensed liquor dealer in another town, who filled the order by putting the designated liquor in a bottle and with many others of the same nature sent it labelled with the customer's name and inclosed in a locked box to the customer. *Held*, that the defendant was the agent of the liquor dealer, and that the sale was completed upon the delivery by defendant, and he was guilty of selling ardent spirits."

The Supreme Court of Georgia in the case of Crabb v. State, 88 Ga. 584, 15 S. E. 455, held that a sale of whisky sent by express C. O. D. is not completed until the whisky is delivered and paid for, and the express agent making the delivery and collection in the county where sale is lawfully prohibited is subject to indictment if he acts knowingly in completing the sale. That court also in the case of Doster v. State, 93 Ga. 43, 18 S. E. 997, held:

"Delivery whether made by the seller or his employé if requisite to complete a sale the contract for which with payment of the purchase price was made elsewhere is contrary to law if the seller has no license authorizing him to sell in the county where the delivery takes place. In such case the sale is to be treated as made, not where the contract was entered into and the purchase money paid, but where it was completed by delivery."

In the case of Vermont v. O'Neil, 58 Vt. 140, 2 Atl. 586, 56 Am. Rep. 557, the court said:

"The liquors were ordered by residents of Vermont from dealers doing business in the state of New York, who selected from their stock such quantities and kinds of goods as they thought proper in compliance with the terms of the orders, put them up in packages, directed them to the consignees, and delivered them to the express company as a common carrier of goods for transportation, accompanied with a bill or invoice, for collection. The shipment was in each instance which it is necessary here to consider 'C. O. D.'; and the cases show that the effect of the transaction was a direction by the shipper to the express company not to deliver the goods to the consignees except upon payment of the amount specified in the C. O. D. bills, together with the charges for the transportation of the packages and for the return of the money paid. This direction was understood by the express company, which received the shipments coupled therewith."

The court also, among other things, said that whether or not and when the legal title in property sold passes from the vendor to the vendee depends upon intention of the parties, which is to be gathered from their acts and all the facts and circumstances of the case taken together, and cited Mason v. Thompson, 18 Pick. (Mass.) 305; Benjamin on Sales, 311, 319, note "c," and 320, note "d"; Robert's Vermont Digest, 610 et seq.

The court, in further discussion of the matter before them said:

"In the cases under consideration [viz., the present case, and another case against O'Neil, for keeping intoxicating liquors with the intent to sell, etc.] the vendors of the liquors shipped them in accordance with the terms of the orders received, and the mode of shipment was as above stated. They delivered the packages of liquors, properly addressed to the several persons ordering the same, to the express company, to be transported by that company and delivered by it to the consignees upon fulfillment by them of a specified condition precedent, namely, payment of the purchase price and transportation charges, and not otherwise. Attached to the very body of the contract, and to the act of delivery to the carrier, was the condition of payment before delivery of possession to the consignee. With this condition unfulfilled and not waived, it would be impossible to say that a delivery to the carrier was intended by the consignor as a delivery to the consignee, or as a surrender of the legal title. The goods were intrusted to the carrier to transport to the place of destination named, there to present them for acceptance to the consignee, and, if he accepted them and paid the accompanying invoice and the transportation charges, to deliver them to him; otherwise, to notify the consignor, and hold them subject to his order. It is difficult to see how a seller could more positively and unequivocally express his intention not to relinquish his right of property or possession in goods until payment of the purchase price than by this method of shipment. We do not think the case is distinguishable in principle from that of a vendor who sends his clerk or agent to deliver the goods or forwards them to or makes them deliverable upon the order of his agent, with instructions not to deliver them except on payment of the price, or performance of some other specified condition precedent by the vendee. The vendors made the express company their agent in the matter of the delivery of the goods, with instructions not to part with the possession of them except upon prior or contemporaneous receipt of the price. The contract of sale therefore remained inchoate or executory while the goods were in transit, or in the hands of the express company, and could only become executed and complete by their delivery to the consignee. There was a completed executory contract of sale in New York; but the completed sale was, or was to be, in this state."

In the case of the United States v. Shriver (decided by the District Court of the United States for the Southern District of Illinois) 23 Fed. 134, the court held:

"In deciding this case it only seems to be necessary to consider the effect of the sales made by shipment from Shawneetown to Fairfield by express C. O. D., to be delivered at Fairfield by the agent of the shipper to the consignee on payment of the price. It is clear that the express agent at Fairfield was also the actual agent of the defendant in receiving and delivering the liquor shipped to Fairfield, and in collecting the money for it; for the defendant employed him for that purpose, and agreed to pay him 10 per cent. on the money collected by him, without reference to whether the liquor was shipped C. O. D. or by tags attached to the jugs with the price and address marked thereon. Certainly, then, as to all the packages shipped C. O. D., the ownership and possession of the liquor remained in the defendant after reaching the hands of his agent in Fairfield just as completely as before it left his store in Shawneetown, and the sale did not take place until the defendant, by his agent, received the money at Fairfield, and delivered the liquor there to the purchaser. This would be true, too, even if the Fairfield express agent had not been specially employed as the defendant's agent in the handling of this liquor; for in the case of liquor shipped by the defendant to Fairfield by express C. O. D., the liquor is received by the express company at Shawneetown as the agent of the seller, and not as the agent of the buyer, and, on its reaching Fairfield, it is there held by the company as the agent of the seller until the consignee comes and pays the money, and then the company, as the agent of the seller, delivers the liquor to the purchaser. In such cases the possession of the express company is the possession of the seller, and generally the right of property remains in the seller until the payment of the price."

In the case of Adams Express Company v. Kentucky, 206 U. S. 129, 27 Sup. Ct. 606, 51 L. Ed. 987, it was sought to hold the express company liable for a violation of a state statute, making all shipments of liquor packages C. O. D. unlawful and also to make the carrier liable to the vendor for its violation. This case was instituted in the circuit court of Laurel county, Ky., in the indictment against Joe Newland and the Adams Express Company it being charged that:

"The said Joe Newland and the Adams Express Company, the latter being a partnership engaged in and carrying on the business of a common carrier of packages, goods, wares, and merchandise, by the method known as express, * * * did in Laurel county, Kentucky, on the seventeenth day of February, 1904. unlawfully and willfully carry for and deliver to George Meece a parcel, package shipment, and quantity of intoxicating, spirituous, vinous and malt liquors * * * to be and which, was paid for on delivery to East Bernstadt, in said Laurel county, same being at the time a shipment commonly known and called C. O. D. shipments, * * * said shipment and delivery being made and done at the time by said Joe Newland and said Adams Express Company in the usual course of business of said Adams Express Company."

Subsequently the action was dismissed as to Newland, and on a plea of not guilty the case was tried before a jury, and resulted in a verdict finding the company guilty and fixing the fine at $60. Judgment was entered on the verdict, which was affirmed by the Court of Appeals of the state. 87 S. W. 1111, 27 Ky. Law Rep. 1096. From that court the case was carried to the Supreme Court on writ of error. The act under which the prosecution was had is subsection 4, § 2557b, Ky. St. 1903, commonly called the "C. O. D. law," which is part of the general local option law as amended in 1902 (Laws 1902, p. 42, c. 14, § 4), and which reads:

"All the shipments of spirituous, vinous or malt liquors, to be paid for on delivery, commonly called C. O. D. shipments, into any county, city, town, district or precinct where this act is in force shall be unlawful and shall be deemed sales of such liquors at the place where the money is paid or the

goods delivered; the carrier and his agents selling or delivering such goods shall be liable jointly with the vendor thereof."

The Supreme Court of the United States held this statute to be an interference with interstate commerce. However, Mr. Justice Brewer in rendering the opinion, among other things, says:

"We do not mean to intimate that an express company may not also be engaged in selling liquor in a state contrary to its laws, or that the fact that the consignee did not order a shipment might not be evidence for a jury to consider upon the question whether the company was not, in addition to its express business, also selling liquor contrary to the statutes. It is enough to hold, as we do, that under the averments of this indictment such testimony is immaterial. It is, of course, a question of fact whether a carrier is confining itself strictly to its business as a carrier or participating in illegal sales. The consignor alone may be trying to evade the statute. * * * Much as we may sympathize with the efforts to put a stop to the sales of intoxicating liquors in defiance of the policy of a state, we are not at liberty to recognize any rule which will nullify or tend to weaken the power vested by the Constitution in Congress over interstate commerce."

Here the question as to whether upon a similar state of facts presented under a proper indictment against the shipper of the goods a conviction would be warranted is left open, and Mr. Justice Harlan, who dissented in all of these cases, at page 141 of 206 U. S., page 609 of 27 Sup. Ct. (51 L. Ed. 992), said:

"I do not think that these are cases of legitimate interstate commerce. They show only devices or tricks by the express company to evade or defeat the laws of Kentucky relating to the sale of spirituous, vinous, or malt liquors. I dissent from the opinion and judgment in each case."

In this case the goods were shipped C. O. D., as has already been stated, and under the circumstances the inquiry naturally arises as to why the seller should have chosen this method of dealing. Ordinarily goods are either paid for at the time they are shipped, or, if the purchaser is solvent, they are charged and shipped, and in such instances the sale is completed at the time the seller parts with the possession of his goods by delivering the same to the express company or railroad company as the case may be. There must have been some reason why the plaintiff in error refused to charge the article in this instance, and took the precaution to ship the goods C. O. D. He could have had but one motive for doing so, and that was to retain the title until he had been paid the price thereof. Otherwise it would have been a vain and foolish thing to ship the goods in the manner described. It must be admitted that this method of shipping goods is employed for the express purpose of protecting the seller, and enabling him at all times to keep under his control the possession of the article shipped until he has been paid the price exacted. A simple statement of this proposition it seems to me ought to be sufficient to show the fallacy of the contention of counsel for plaintiff in error. Suppose this package of whisky had been destroyed en route to Grafton, could it be reasonably contended that Horton, the vendee, would have been entitled to institute action against the express company for damages for its destruction? Could Horton, at any time after the goods reached Grafton, have secured possession of the same, by claim and delivery

or other suitable process, without first paying the purchase price? I think not, and this after all is the true test.

The Supreme Court of North Carolina in the case of Sims v. Norfolk & Western Railroad, 130 N. C. 556, 41 S. E. 673, in passing this phase of the question, among other things, said:

"By the 'facts agreed' in this case it appears that Sears, Roebuck & Co., of Chicago, have not paid said tax nor obtained a license, and that prior to this transaction they had made several deliveries at various points in North Carolina, on the lines of other interstate railroads running into this state, and that all these shipments, like the one here in question, were made on bills of lading providing that the sewing machine should not be delivered till it was paid for by the person named as consignee. Thus the title could not pass till such payment was made to the common carrier, acting as agent of the shipper. This was an executory contract in Illinois, but there was no sale till the payment was made, and thus the sale was executed in North Carolina and the shippers are liable to the above tax. The title to this machine having remained in the shipper until such payment (Tiedeman on Sales, §§ 95, 97), the machine was properly levied on before such payment for the license tax due by the shippers (Laws 1901, p. 151, c. 9, § 101, last paragraph of section). The well-known case of O'Neil v. Vermont, 144 U. S. 324, 12 Sup. Ct. 693, 36 L. Ed. 450, is decisive of the point. There in the shipment of liquor from New York into Vermont C. O. D., it was held that the completed executory contract was in New York, but the completed sale was in Vermont—as here."

One can well understand how a whisky dealer residing at Clarksburg and unacquainted with those who might desire to purchase his goods in the town of Grafton would have been unwilling to sell such party on a credit, and the only thing the seller could do under such circumstances to protect his interests would be to reserve the title to the property until it reached Grafton, and there surrender the same to the purchaser upon the payment of the purchase price, and this is exactly what occurred in this case. And the case now before us is just as strong as if the defendant, the plaintiff in error, had carried the goods to Grafton himself, and there delivered the same upon the payment of the purchase price.

The District Court of the United States for the Western District of North Carolina, Dick, District Judge, held in the case of the United States v. Cline, 26 Fed. 515:

"Contracts of sale of personal property at the common law should be so construed as to ascertain the intention of the parties in regard to the passing of the title of the subject-matter of the agreement. 'If a man agrees with another for goods at a certain price, he may not carry them away before he has paid for them, for it is no sale without payment unless the contrary is expressly agreed.' Where a sale is proposed by a vendor, and the offer is accepted by the vendee, 'the bargain is struck,' but if, by the express terms of the contract, anything remains to be done by the vendor before delivery, or the delivery is to be made at a future day, and at a different place, on the payment of the price agreed upon, a complete present right of property is not vested in the vendee. The contract is, however, obligatory, and, if either party fails or refuses to comply with his agreement, he is responsible in damages if the other party is ready and willing to perform his part of the contract. When the terms of the bargain have been agreed on, and everything that the vendor has to do with the goods to put them in a condition for immediate delivery, the sale is absolute, without actual payment or delivery, so that the property is in the vendee, and the goods are at his risk as to accident and damage. The vendee is not entitled to the possession until he pays or tenders the price, or gets a future day for payment. for the vendor has a lien on the property for the price, and only payment or tender of payment gives the ven-

dee a right of possession. If the vendee tenders the price to the vendor, and he refuses it, the vendee may seize the goods or have an action for obtaining them. When specific goods are sold on a credit, and there is no agreement as to the time of delivery, the vendee is entitled to immediate possession, and the right of property at once vests in him. If goods bargained for constitute only a part of a stock or larger quantity of the same kind, a title to the goods sold does not pass to the purchaser until they are set apart and designated as his portion. If the purchaser has paid for a certain quantity of the goods in bulk, and has agreed to be present, and have the goods set apart and ascertained and delivered on or before a certain day, and he fails to comply with this agreement, the goods contracted for remain at his risk of damage and accident. It is not necessary for a vendor and vendee to come together in order to complete a sale of personal property and a transfer of the title. This can be done by the intervention of agents, or by means of written correspondence. If an agent negotiates a purchase in the name of his principal, the transaction has all the elements of a contract made by the principal. If a proposition of purchase is made by letter, and is accepted by a vendor, and he delivers the article purchased to a common carrier as directed by the purchaser, such delivery completes the contract of sale, and transfers title, without payment of the price, as the common carrier is the agent of the purchaser, and the vendor only has the right of stoppage in transitu if the purchaser is ascertained to be insolvent. If a vendor delivers an article ordered to a common carrier, marked 'C. O. D.,' and directed to an intended purchaser, the contract of sale is completed at the place of delivery to the purchaser on the payment of the price, as the common carrier is the agent of the vendor for the purposes expressed, and the ownership of the property set apart for the purchaser does not pass to him until he pays the price. This principle of law was applied by me in this court several years ago in the trial of the case of U. S. v. Williams, and I am informed that the commissioner of internal revenue has so ruled in the collection of special taxes from dealers in liquors."

It is insisted that the decisions of the Supreme Court of West Virginia, as well as the courts of some of the other states, are in support of the contention that the sale in this instance was complete when the package was delivered to the express company at Clarksburg. While it is true that in West Virginia and in many of the other states the courts of last resort have so held, yet this court is not bound by any decision of a state court in a case like the one at bar. As a result of recent state and federal legislation, the various courts are gradually changing the rule in this respect, and it is well to remember in this connection that there has been no decision of the Supreme Court of the United States in conflict with the rule announced by the United States District Courts in the cases of the United States v. Shriver and United States v. Cline, supra.

If the facts in this case do not constitute a sale at the place where the whisky was delivered and paid for, then it would be an easy matter, under such circumstances, for a saloon keeper residing in a territory where under the state law he is authorized to sell liquor to invade the prohibition territory in such state by the method adopted in this instance, and thereby enjoy all the benefits and privileges accorded a licensed dealer in communities where the sale of liquor is authorized, and thus avoid the payment of the state, city, and county taxes and at the same time deprive the government of its tax. This would not only be so, but it would further result in greatly embarrassing the state, county, and city officials charged with the enforcement of the state statutes enacted for the purpose of prohibiting the sale of liquor in such territory.