**Fred Albert CARLSON, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 5649.**

United States Court of Appeals
Tenth Circuit.

Oct. 28, 1957.

Carmon C. Harris, Oklahoma City, Okl., for appellant.

Philip R. Douglas, Asst. U. S. Atty., Oklahoma City, Okl. (Paul W. Cress, U. S. Atty., Oklahoma City, Okl., was with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Appellant Carlson was convicted under two counts of an indictment returned against him and others. The first count charged conspiracy to engage in business as a retail liquor dealer without paying the special tax required by law. On this count Carlson was sentenced to imprisonment for 18 months and fined the sum of $2,500. The fifth count charged that Carlson carried on the business of a wholesale liquor dealer without paying the special tax. For this offense Carlson received a term of 18 months to run concurrently with the term imposed on Count 1. Counts 2 and 3 did not involve Carlson and on Count 4 Carlson was found not guilty by the jury.

The first count charges that during the period October 5, 1955, to March 5, 1956, Carlson, Orville Lindsay Chambless, Mary Lou Chambless, and James Cullen Hodge conspired with each other, and with other unknown persons. The object of the conspiracy is stated thus in the indictment:

"* * * it was the purpose and object of the aforesaid unlawful conspiracy and of said defendants and their co-conspirators, and each and all of them, that they would, throughout the continuance of said conspiracy, carry on the business of a retail liquor dealer in the premises of Orville Lindsay Chambless and Mary Lou Chambless, 4901 Northwest 50th Street, Oklahoma City, in the Western District of Oklahoma, without paying the special taxes *therefore* as required by the Internal Revenue laws of the United States of America."

The principal ground urged for the reversal of the conviction under Count 1 is the insufficiency of the evidence.

26 U.S.C. § 5121(a) (1) provides for a special tax of $50.00 a year on every retail dealer in liquors. Section 5691 imposes a penalty of fine and imprisonment for any person who carries on the business of a retail dealer in liquors and wilfully fails to pay the special tax. A retail dealer in liquors is defined in section 5122 as follows:

"Except as otherwise provided, every person who sells, or offers for sale, foreign or domestic distilled spirits, wines, or beer in quantities of less than 5 wine gallons to the same person at the same time shall be regarded as a retail dealer in liquors: * * *."

The indictment in its Count 1 does not charge the substantive offense of carrying on the business of a retail liquor dealer without paying the tax, but rather a conspiracy to commit such an offense. The gist of the offense of conspiracy as defined by 18 U.S.C. § 371 is agreement among the conspirators to commit an offense attended by the act of one or more of the conspirators

to effect the object of the conspiracy.[1] The controlling question on this count is whether Carlson entered into a conspiracy to carry on the business of a retail liquor dealer at the Chambless premises, 4901 Northwest 50th Street, Oklahoma City, Oklahoma.

The parties have submitted a stipulation summarizing the testimony. Prior to August, 1955, Orville Chambless was in the retail liquor business in Oklahoma City. His customers secured liquor from him by placing orders through his telephone located at 4901 Northwest 50th Street. Carlson who lived at 2948 Lakeside Drive, Oklahoma City, had paid the required tax covering his operations as a retail liquor dealer at that address. Carlson and Mary Lou Chambless entered into an oral agreement whereby calls coming to the Chambless home over the telephone there located "would be transferred to the appellant [Carlson] for the filling of said orders and the delivery of the whiskey to said customers." In the stipulation it is stated that:

"Pursuant to said agreement, and commencing on or about October 5, 1955, the said Mary Lou Chambless did receive numerous and sundry telephone orders for whiskey over said telephone, which orders were made by persons who knew that telephone number WIndsor 2–5521 was a number that could be used for placing an order for whiskey. That the said Mary Lou Chambless customarily took the orders, consisting of the name and address of the customer, and the quantity and price of the whiskey desired to be purchased, and transferred the same to the appellant at his home, 2948 Lakeside Drive, Oklahoma City, Oklahoma, where the appellant, or his agent, took the orders and customarily filled them by sending the whiskey so ordered to the customer

at his address and collecting therefor upon delivery."

In the stipulated summary of the defendant's testimony, it is stated that "Appellant [Carlson] determined whether any given order would be filled or declined."

■ The question raised resolves itself into a determination of whether the receipt of these telephone orders for whiskey at the Chambless residence and their subsequent transmission to Carlson constitute the carrying on of the business of a retail liquor dealer at the Chambless residence. We are of the opinion that it does not. The record is devoid of any evidence showing any affirmative act of sale or of an offer to sell at that address. There is no evidence that Mary Lou Chambless under her agreement with Carlson either accepted liquor orders at her premises or filled them from her premises. All she did was to receive the order and transmit it to Carlson. The stipulated summary is that Carlson had the right to determine whether any given order would be filled. There is nothing in the record before us of any agreement to the contrary.

■ A sale is a voluntary transfer of property for a valuable consideration.[2] No liquor was sold at the Chambless residence. The orders were merely passed on for acceptance and filling.

■ The statute includes within the term retail dealers in liquors one who "offers for sale." As said in the Restatement of the Law of Contracts, Vol. 1, § 23, p. 28, it is essential to the existence of an offer that there should be a proposal by the offeror to the offeree, and that the offeree should know that the proposal has been made to him. The stipulated record shows that Orville Lindsay Chambless had been engaged in the retail liquor business and that his customers ordered liquor by calling the phone at his home, 4901 Northwest

1. United States v. Falcone, 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128; Braverman v. United States, 317 U.S. 49, 53, 63 S.Ct. 99, 87 L.Ed. 23.

2. Helvering v. Nebraska Bridge Supply & Lumber Co., 8 Cir., 115 F.2d 288, 290; Commissioner of Internal Revenue v. Freihofer, 3 Cir., 102 F.2d 787, 790.

50th Street. Orville Chambless had ceased to carry on the liquor business but his telephone number was known to his old customers. There is no evidence of any agreement between Orville Chambless and Carlson.

The alleged unlawful conspiracy here is said to arise from the agreement between Carlson and Mrs. Chambless to transmit to Carlson these orders from the old customers of Mr. Chambless. There is no showing of any affirmative act by either Mrs. Chambless or Carlson to solicit liquor business at the Chambless residence or to hold out to the public in any way that liquor could be procured by calling the Chambless phone number. Rather there was an effort to take over the customers of Orville Chambless.

The prosecution introduced as an exhibit a price list of various liquors bearing the phone number of the Chambless residence. This is an offer for sale but there is nothing in the record to connect either Carlson or Mary Lou Chambless with that exhibit. There is no evidence that any liquor was kept for sale at the Chambless residence or that any sales were effected at the Chambless residence.[3]

█ Counsel for the government contend that there is shown to be an offer to sell at the Chambless residence because one Stone, a delivery man for Carlson, during the period of his employment by Carlson called Mary Lou Chambless at her home, received from her orders for liquor, and then filled these orders either from liquor which he carried in his automobile or from the place where Carlson stored liquor. Such conduct of Stone does not aid the government's case.

There is no showing that appellant Carlson knew of such conduct on the part of Stone or acquiesced therein. The charge is one of conspiracy. The gist of that offense is the agreement coupled with an overt act. The stipulated summary shows that the agreement was that Mary Lou Chambless would take the orders and transfer them to Carlson "for the filling of said orders and the delivery of the whiskey to the customers." This agreement did not constitute a conspiracy to sell or offer for sale liquor at the Chambless residence.

It follows that the conviction of Carlson under Count 1 is not sustained by the evidence.

██ It is urged that Count 5 under which Carlson was charged with and convicted of the offense of carrying on the business of a wholesale liquor dealer is defective in that it states that Carlson engaged in such business "during the fiscal year 1956." The argument is that this covers the period July 1, 1956, to June 30, 1957, and that as the evidence shows the sales were made prior to March 6, 1956, there is a fatal variance between the indictment and the proof. The indictment must be considered as a whole.[4] Count 1 of the indictment against Carlson charges an offense occurring "during the fiscal year of 1956, beginning July 1, 1955." The record discloses that Carlson's attorney during the course of the trial referred to "the fiscal year of 1956 beginning July 1, 1955." The indictment was sufficient under the rules stated in United States v. Crummer, supra, 151 F.2d at page 962, and there was no variance.

Judgment is reversed as to Count 1 and affirmed as to Count 5.

---

3. See United States v. Chevallier, 9 Cir., 107 F. 434, 436; DeBary v. Dunne, D.C. Or., 172 F. 940, 942; United States v. Lacky, D.C.Va., 120 F. 577–579; United States v. Dodge, D.C.Or., 25 Fed.Cas. page 879, No. 14,974.

4. McCoy v. United States, 9 Cir., 169 F. 2d 776, 780; cf. United States v. Crummer, 10 Cir., 151 F.2d 958, 962.