## UNITED STATES v. LACKEY.

(District Court, W. D. Virginia. February 17, 1903.)

1. INTOXICATING LIQUOR—LICENSE—SALES—PLACE—PRIVATE CARRIER—LIABIL-
ITY.

A licensed liquor seller received orders from customers living in a place where he was not authorized to sell. He filled such orders by separating the liquor from the stock in his place of business, and delivering the packages, marked with the customers' names, to a private carrier, to be carried to the customers, and to be delivered at their place of residence, on payment of the price. *Held*, that the sales were completed in the seller's place of business, where he was licensed to sell, and hence the carrier was not liable for retailing liquor without a license.

Thos. L. Moore, U. S. Atty.

J. W. Hartwell, for defendant.

McDOWELL, District Judge. The defendant was indicted for retailing liquor without license. The facts developed on the trial are as follows: One F. Dehart, who operated a registered distillery at Woolwine, Va., which is about 40 miles from Roanoke, and had licenses to sell at wholesale and retail at his place in Woolwine, received by mail sundry orders for liquor from persons living in Roanoke. The agreement between Dehart and his customers in Roanoke was that the liquor was to be delivered in Roanoke, and was to be there paid for when delivered. There were several orders, each for a 4½-gallon keg, and the only practicable method of transportation from Woolwine to Roanoke was by wagon. After Dehart received the orders, he filled the required number of kegs from his stock, tagged each keg with the name of its respective consignee, and delivered them to Lackey. Lackey's instructions were to take the kegs to a place agreed upon in Roanoke, there collect the purchase price, and then deliver the casks to the purchasers. Lackey was described as a "truckster"; that is, one who purchased garden and farm products and hauled them to market. Apparently his chief business for some time had been hauling whisky for Dehart to different points. He was paid by Dehart for the hauling. There was no evidence that the persons who ordered the whisky gave any directions as to the person by whom the liquor should be brought to them. When Lackey reached Roanoke, and after he had delivered some of the kegs and collected therefor, he was arrested. The defense was based on the theory that these sales were made by Dehart at Woolwine. The government's case was based on the theory that the sales were made in Roanoke, and that the agent, Lackey, is equally as guilty as the principal. The government requested an instruction to the effect that the jury shall find the defendant guilty if they believe him to have been the agent of Dehart. In Black on Intoxicating Liquors, sec. 434, the following are laid down as established rules:

"(1) When a liquor dealer has a license from the city or county in which his store is kept, he may send out agents and take orders in any part of the state for goods to be selected and forwarded from the stock kept in such

¶ 1. See Intoxicating Liquors, vol. 29, Cent. Dig. § 162.

store, and he is not required to obtain a license from the authorities of each city or county in which contracts are made therefor by such agents. (2) A licensed dealer, who receives, at his place of business, an order for liquor from a place in which he has no license, and fills it by selecting the liquor from his stock and delivering it to an express company or other carrier to be carried to the purchaser, does not violate the license law, although the carrier agrees to collect and return the price; for the sale is made at the place where the goods are separated from the general stock and delivered to the carrier, such delivery being delivery to the consignee. (3) Irrespective of the place where the bargain was made or the order received, if the seller, by his own hands or the hands of his servant or agent, carries the liquor to the purchaser, without any intermediate delivery to or through a common carrier, and delivers the liquor to the purchaser at the latter's place, and there receives the pay for it, the sale is made at the place of delivery, and, if the vender is not licensed to sell there, he is indictable."

To the same effect see 11 Am. & Eng. Ency. (1st Ed.) pp. 741–5.

Lackey cannot be classed as a common carrier. 2 Am. & Eng. Ency. (1st Ed.) 777; 1 Bouv. Law. Dict. 343. For the purpose of collecting the purchase price, he was certainly the agent of Dehart. 2 Am. & Eng. Ency. (1st Ed.) 899. But for the purposes of carriage and delivery he was the agent of Dehart, or of the purchasers, dependent on the question as to when the title to the liquor passed from Dehart to the purchasers. If the title passed at the time the kegs were delivered by Dehart to Lackey at Woolwine, Lackey was the agent of the purchasers; for they, by implication, authorized Dehart to select for them an agent to transport the liquor. If the title did not pass until payment, or until delivery in Roanoke, Lackey was the agent of Dehart. The true question in all such cases is, when did the title pass? If it passed at Woolwine, the transaction was legal, and neither Lackey nor Dehart are guilty. If it passed at Roanoke, both are guilty. There is no room for question that a sale on credit can be a completed sale, and the article become the absolute property of the vendee, prior to payment. 21 Am. & Eng. Ency. (1st Ed.) p. 499. In such case, is delivery to the vendee, or to the vendee's agent, an essential element of a completed sale? Assume that the contract of sale on credit has been made; that the desired article has been seggregated from the vendor's stock, and marked distinctly as the property of the vendee, and is still in the vendor's possession awaiting an opportunity for shipment. Is this enough to transfer the title? In case where there is no express or implied agreement that the sale shall not be complete until delivery, I think the acts above mentioned transfer the title to the vendee. 21 Am. & Eng. Ency. (1st Ed.) 511–12, note. Now, is it possible to discriminate the case where the goods are shipped "collect on delivery," where there is nothing in the order for the goods, and no previous course of dealing between the parties, from which their intention can be learned? In other words, is the mere fact that the shipment is "collect on delivery" sufficient to make payment a condition precedent to transfer of title? On authority it is not. Black, Intox. Liquors, p. 510; 21 Am. & Eng. Ency. (1st Ed.) p. 511, note. And in reason it is not. An order for goods to be shipped "collect on delivery" makes payment a condition precedent to or concurrent with delivery to the purchaser, but it does not necessarily make payment a condition precedent to the transfer of title. In such

cases—there being nothing to show the intention other than the mere order to ship a certain article "collect on delivery"—it seems to me that when the seller has segregated the article, packed it, addressed the package to the consignee, and delivered it to the carrier, he has done all that the contract implied that he should do. The title then vested in the purchaser, subject to be defeated on breach of the condition subsequent that the vendee pay the purchase price on delivery to him. If this be sound, I do not see what difference it makes that the carrier selected by the seller is not a common carrier, but is his own servant. The common carrier is the agent of the consignor if the title does not pass until delivery to the consignee, and is the agent of the consignee if the title passed on delivery to the carrier. Just so even where the carrier is one in the regular salaried employ of the seller, whose sole business is to carry and deliver articles for the seller to his customers. In such cases, if the title passed at the time of delivery by the seller to the servant, the servant is pro hac vice the agent of the buyer. In arriving at a conclusion as to whether or not the title passed at the time of delivery by the seller to the servant, the question is, as in all cases of sales of chattels, one of intent. If it was expressly or impliedly agreed between the buyer and seller that the title should not pass until delivery by the servant to the buyer, then the sale was made at the place of delivery to the buyer. But in the case at bar we have no facts to warrant us in assuming an intent that title was not to pass on delivery of the kegs to Lackey.

In a criminal case the burden is on the government; and, if no evidence is adduced sufficient to warrant a conviction, a direction to the jury to acquit is proper. The facts adduced here do not show that the title to the liquor did not pass at Woolwine. If the delivery at Woolwine had been made by Dehart to Adams Express Company, collect on delivery (all the other circumstances being the same as in the case at bar), both on reason and on weight of authority, the express company would not have been guilty. The only argument for holding Lackey guilty is that, as he was in some sense the servant of Dehart, it may be inferred that the parties did not intend the title to pass until delivery at Roanoke. But, in the nature of things, if a dealer who has access to a common carrier can make legal sales, "collect on delivery," to purchasers at places not covered by his license, why cannot a dealer who must depend for carriage on a wagoner (even his own servant) also make such sales? To the purchasers in the case at bar it was, presumably, a matter of entire indifference whether the liquor was sent by an express company or by some other carrier. It may be said that the difference lies in the fact that in the case at bar the seller had not done all that he was to do until a delivery was made in Roanoke. But he has done all that he was to do as much in the case at bar as in cases where the delivery was made by him to the express company. To my mind, in all such cases, where we have no certain guide showing a different intent, the acceptance of the order for the article, as shown by the act of the seller in segregating the specific article from his stock and marking it with the address of the purchaser, is sufficient to mark the contract as closed, and to effect a transfer of title. But, if not so, certainly when delivery by the seller to a carrier—even his

own servant—is added to the other acts done by him, there is no question but that the title has passed.

It may be said that, even after delivery by the seller to his servant, the article is still under the control of the seller. Ordinarily, it is true that the seller's servant, if so directed, would obey an order from his employer to return the article to the general stock, or to remove the address on it, and deliver it to some other customer. But the question is, had the master a right to give such orders? I think not. The title having been transferred to the buyer, the seller had no rights, other than he would have had if he had delivered the article to a common carrier; i. e., the right of stoppage in transitu.

In cases of this kind, when proper to be left to the jury, the instruction to be given is not as to whose agent the carrier was, but is as to the time when, or rather the place where, title to the liquor passed to the purchaser. In the case at bar there was no conflict of evidence as to the facts. The testimony presented a state of facts which, to my mind, showed a sale at Woolwine.

The instruction asked by the government was refused, and the jury was directed to acquit the defendant.