## Josselson v. Commonwealth.

(Decided September 24, 1913).

### Appeal from Pike Circuit Court.

1. Intoxicating Liquors—Local Option Law—Place of Sale—Evidence —Peremptory Instruction.—Where the purchaser of whiskey gives, in local option territory, to the member of a firm engaged in business where the local option law is not in force, an order to send him a gallon of whiskey, the sale takes place at the point where the whiskey is delivered to the express company, and not at the place where it is delivered by the express company to the pur-

chaser, in the absence of any understanding or agreement be-tween the seller and the purchaser that the whiskey is not to be paid for until actually delivered to the purchaser, in which event the sale takes place at the point where delivery is made by the express company, and if such delivery be made in local option territory, the seller is liable under the local option act.

2.  Intoxicating Liquors—Act of 1912—Instructions.—The Act of 1912, making it unlawful to purchase or procure intoxicating liquors as the agent of the seller or buyer, refers to the purchase or pro-curement of it in prohibited territory.

J. J. MOORE and PINSON & STATEN for appellant.

R. MONROE FIELDS, Commonwealth Attorney; JAMES GAR-NETT, Attorney General, and OVERTON S. HOGAN, Assistant Attor-ney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Appellant, Frank Josselson, was indicted for the of-fense of selling, loaning, procuring for and furnishing intoxicating liquors to another in Pike County, Ken-tucky, where the local option law was in force. He was tried and convicted, and his punishment fixed at a fine of $60. From the judgment of conviction he prosecutes this appeal.

The evidence heard on the trial is, in substance, as follows:

H. M. Hoskins, the purchaser of the liquor, states that while in a pool room in Pikeville, appellant in-quired of him if he "wanted anything." Witness said yes, he might send him a gallon. In a few days the liquor came to the express office, and witness got it and used it. A short time thereafter appellant came into the office of witness and witness asked him how much he owed him. Appellant either handed him a bill or told him the amount and witness paid him $4 for the liquor. This occurred after September, 1912. On cross-examination witness stated that Mr. Josselson was en-gaged in business at Catlettsburg, Kentucky, and the local option law was not in effect there.

At this point the Commonwealth closed, and the de-fendant moved for a peremptory instruction, which mo-tion was overruled.

Thereupon appellant himself testified as follows:

Was in the liquor business in Catlettsburg, Ken-tucky, and Ironton, Ohio. Catlettsburg was not local

option territory. One evening he was in a pool room in Pike County, watching some men play pool. Mr. Hoskins came in and asked him when he was going home. He told Hoskins he would leave the next morning. Hoskins said to send him a gallon of whiskey. Witness went home the next worning and told his brother, who managed his business, and presumes that the whiskey was sent. Witness did not attend to the shipping part of it. Witness was in partnership with his brother at Catlettsburg. His brother managed the affairs and the shipping. Sometimes they shipped whiskey from Ironton, Ohio, and sometimes from Ceredo, West Virginia. Could not say how the whiskey in question was shipped. On cross-examination witness stated that he told his house what Mr. Hoskins told him. Thinks it was in January when he collected for the whiskey. He had a statement in his pocket and handed it to Hoskins. Thinks the amount of the bill was $4.25. Hoskins handed him the money. In shipping whiskey into Pike County they sometimes shipped it from their Ironton place. Could not say whether or not it was shipped from Kentucky. Their rule was in shipping to Kentucky to ship from Ceredo, West Virginia, or from Ironton, Ohio. Ceredo is about three miles from Catlettsburg and Ironton is about eleven miles. The reason that they did not ship from Catlettsburg was that the express office would not accept orders for Kentucky points.

H. M. Hoskins being recalled by the court testified that he got the whiskey by express out of the express office. Thinks the express charges were paid. The express office was in Pikeville. On cross-examination witness stated that he was not sure about the express charges being paid. Thinks that he got this particular liquor for his own use. Could not say from what house it came. Along about that time he frequently got whiskey for election purposes.

So far as the evidence now before us is concerned, it is manifest that the case amounts to this: The purchaser, Hoskins, knowing that appellant was engaged in the liquor business in the city of Catlettsburg, requested him to send him a gallon. In the absence of any understanding or agreement to the contrary, the presumption is that the purchaser intended the goods to be shipped in the usual manner, that is, by common carrier, and that the common carrier is the agent of the

,purchaser.. Therefore, when the whiskey was delivered to the carrier at Catlettsburg, the agent of the purchaser, the title thereto vested in the purchaser, and the sale took place in Catlettsburg and not in Pike County. Commonwealth v. Gast, &c., 143 Ky., 674; Parker v. Commonwealth, 147 Ky., 715; Doores v. Commonwealth, 28 Ky. L. R., 192. Since under the evidence before us the sale took place in Catlettsburg and not in Pike County, appellant was entitled to a peremptory instruction. However, if it was understood or agreed between appellant and the purchaser, Hoskins, that the whiskey was not to be paid for by Hoskins unless or until it was delivered to him in Pike County, then the sale took place in Pike County, and appellant was liable.

Among the instructions given by the trial court was one authorizing a conviction under the Act of 1912, which makes it unlawful for any person, firm or corporation to purchase or procure from another spirituous, vinous, malt or other intoxicating liquors, mixtures or decoctions, either as agent of the buyer or agent of the seller, in any county, district, precinct, town or city, where the sale of intoxicating liquors has been prohibited or may be prohibited, whether by special act of the General Assembly or by vote of the people under the local option law of the State. Manifestly this instruction was, erroneous, for it has been held that the Act of 1912 refers only to the purchase or procurement of intoxicating liquors in prohibited territory. Calhoun v. Commonwealth, 154 Ky., 70. In the present case the whiskey was neither purchased nor procured in local option territory.

If on the return of the case the evidence be substantially the same as that before us, the court will direct a verdict in favor of appellant. If, however, there be evidence tending to show that it was understood or agreed between appellant and the purchaser, Hoskins, that the whiskey was not to be paid for unless or until it was delivered .to Hoskins in Pike County, the court will instruct the jury as follows:

The jury should find the defendant not guilty unless they believe from the evidence beyond a reasonable doubt that it was understood or agreed between Hoskins and the defendant that the whiskey was not to be paid for by Hoskins unless or until it was delivered to him in Pike County, in which event they will find him guilty and fix his punishment .at a fine of not less than sixty

nor more than one hundred dollars, or confinement in the county jail for not less than ten nor more than forty days, or both such fine and imprisonment in their discretion.

Judgment reversed and cause remanded for a new trial consistent with this opinion.