## Frogg v. Commonwealth.

(Decided February 25, 1915.)

### Appeal from McCreary Circuit Court.

1. Intoxicating Liquors—Search For and Seizure of Liquors—Confiscation—Contraband.—Under Chapter 78, Acts of 1914, any judge or justice of the peace may, when affidavits of three or more reputable persons are filed with him, by his warrant, cause any house in local option territory to be searched for the detection of liquors kept there for purpose of sale, and arrest the person in charge of the house.

2. Intoxicating Liquors—Search and Seizure—Warrant—Affidavit for.—The absence of such affidavits cannot serve as a defense to the prosecution, and no steps attacking the warrant having been taken in the courts below, and no reference made to it in the motion for a new trial, it is too late to raise the question in this court.

3. Intoxicating Liquors—Act of 1914—United States License.—So far as distillers are concerned, the Act of 1914 repeals so much of Section 2557b, which makes the possession of United States license prima facie evidence of guilt.

4. Intoxicating Liquors—Local Option Law—Sections 2558, 2558a, Kentucky Statutes.—Sections 2558 and 2558a, exclude distillers from the provisions of the local option law as to sales of whiskey of their own manufacture by wholesale, but a distiller is not protected by that exception where the whiskey was kept for sale and the sales made at his residence or in quantities of less than five gallons.

5. Intoxicating Liquors—Local Option—Violation of Law.—Where an agreed statement of facts showed that appellant, a distiller, had 13 gallons of whiskey at his residence in local option territory for the purpose of putting it up into packages containing less than 5 gallons each, and had received mail orders with money enclosed in payment for the same, and had already put up four packages and marked and labeled the same in the name of the purchaser, and intended to deliver the same to a common carrier for shipment to parties in Tennessee, he is guilty of having whiskey in his possession for purposes of sale in local option territory, notwithstanding the fact that the same was not to be consumed by parties in Kentucky.

6. Intoxicating Liquors—2569a Kentucky Statutes—Repeal of.—The Act of 1914 repeals Section 2569a of the Kentucky Statutes to the extent that a common carrier is now permitted to receive and transport at and between points in Kentucky liquors subject to the restrictions imposed upon them by the Act of 1914.

ROBERT HARDING, JOHN W. RAWLINGS, L. G. CAMPBELL and W. W. WATTS, amicus curiae, for appellant.

JAMES GARNETT, Attorney General, and ROBERT T. CALDWELL, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Nunn—Affirming.

The county judge issued a warrant for the arrest of the appellant, John Frogg, charging him with unlawfully having in his possession intoxicating liquors in McCreary County for sale in that county contrary to law. The warrant also commanded the arresting officer to search the residence and other premises of the appellant and seize and take possession of any intoxicating liquors there found, ''and if you find such liquors you are commanded to arrest the said Frogg, and bring him before me or some magistrate of McCreary County to be dealt with according to law.'' Whiskey was found and Frogg was arrested, and on a trial before the county judge he was convicted and fined $50 and sentenced to confinement in the county jail for ten days. He appealed from this judgment to the Circuit Court, and there the case was tried upon an agreed statement of facts, and the same judgment rendered as in the county court.

Before coming to the merits of the case, we will deal with an objection to the warrant. That part of the warrant directing a search of the premises is authorized by Chapter 78 of the Acts of 1914, being an ''Act providing for the search of premises in local option territory,'' and approved March 21, 1914. Any judge or justice of the peace, under that act, when affidavits of three or more reputable persons are filed with him, may, by his warrant, cause any house in local option territory to be searched for the detection of intoxicating liquors kept there for purposes of sale, and arrest the person in charge of the house.

The record does not show whether the warrant was supported by the affidavits, but appellant says that the warrant was issued without the affidavits, and was, therefore, an unlawful act upon the part of the county judge. For the purpose of this case, conceding that the judge acted unlawfully in issuing the warrant without the affidavits, yet if the party was, in fact, guilty of the offense charged, the absence of affidavits to support the warrant cannot serve as a defense in the prosecution. No demurrer or other step attacking the sufficiency of the warrant was interposed in either court below, and no reference is made to it in the motion for a new trial preparatory to an appeal to this court; so that, in any event, it is too late now to raise the question. Baldridge

v. Commonwealth, 28 Ky. L. R., 33; Cheek v. Commonwealth, 162 Ky., 56.

The real question presented is whether under present State and Federal laws, the proprietor of a distillery situated in prohibition territory in Kentucky may have in his possession whiskey for purpose of sale by retail, that is, in quantities less than five gallons, to mail order customers residing in another State, who forward the purchase price with their order to the distiller at his place of business. Stating the facts in an abbreviated way, it appears that Frogg owned and operated a registered distillery in McCreary County, which was local option territory, and had in his possession, and at his residence, United States Government license authorizing him to retail liquors of his own manufacture, and that at the time he was arrested he had withdrawn from his distillery and taken to his residence nearby, thirteen gallons of whiskey, and was there putting it up in packages, that is, in bottles containing less than five gallons each, and preparing them for shipment in the packages to certain named parties living and residing in the State of Tennessee, and four of the packages were already marked by Frogg and ready for shipment to Tennessee. In addition to the four packages or bottles of whiskey labeled and ready for shipment, the officers seized about ten gallons of whiskey yet in the original barrel. This residue was intended to be put in packages of less than five gallons and marked for "personal use" and shipped by way of the Southern Express Company to consignees in the State of Tennessee. Had it not been seized the whiskey would have been shipped to purchasers in the State of Tennessee, and they had already mailed to him, and Frogg had received their orders containing the money in payment for it. Frogg had not sold or had in his possession for sale by retail, that is, in quantities less than five gallons, whiskies or other intoxicating liquors in McCreary County in any manner except as above stated.

As already indicated, the offense charged is that of having in possession liquors for sale in local option territory. The 1914 Act of the Legislature provides that one who has paid United States Internal Revenue Tax permitting the sale of any such liquors shall be deemed to have paid the tax with the intent to violate the prohibition laws, but the act especially exempts distillers

from that rule, that is, possession by a distiller of government license is not presumptive evidence against him that the liquors in his possession are for purposes of sale in violation of law. The law that appellant is charged with violating and of which he is not presumptively guilty by having in his possession a government license, is Sub-section 2 of Section 2557b of the Kentucky Statutes, which is as follows:

"It shall be unlawful for any person to sell, lend, give, procure for, or furnish to another, any spirituous, vinous or malt liquors, or to have in his possession spirituous, vinous or malt liquors *for the purpose of selling them in any territory where said act is in force,* and any person so offending shall be fined not less than fifty nor more than one hundred dollars, and imprisoned not less than ten nor more than fifty days.

The possession of a United States special tax stamp (commonly called United States license) for carrying on the business of a retail dealer in spirituous, vinous or malt liquors, or the having of such tax stamp or license stuck up at the place of business in such territory shall be *prima facie* evidence of guilt under this section."

In other words, the 1914 Act, as to distillers, repeals the last paragraph of the section quoted, and which has reference to *prima facie* evidence of guilt. But the liquor in question was not at his distillery. He had withdrawn it from the bonded warehouse and taken it to his residence, where he admits he had it for purpose of sale in quantities less than five gallons.

Sections 2558 and 2558a exclude distillers from the provisions of the local option law as to sales of whiskey of their own manufacture by wholesale to dealers, that is, in quantities of five gallons and over, which is delivered at one time and not to be drunk on the premises. In other respects they, like other persons, are subject to the local option statutes. So that for two reasons Frogg does not show himself protected in sales of whiskey by any of the exceptions to the local option law. (1) The sales or intended sales were in quantities of less than five gallons, and (2) the whiskey was kept for sale and the sales made at his residence and not at the distillery, the place of manufacture.

But appellant contends that he is not guilty of a violation of the law because he did not intend to sell it to any one in Kentucky, nor did he intend for any one to

use or consume it in Kentucky. Furthermore, he insists that as the business was a part of interstate commerce, and the whiskey was to be delivered to an interstate carrier for shipment to consignees in the State of Tennessee, an application of the prohibitory liquor laws of Kentucky to such business would be an interference with interstate commerce, and, therefore, contrary to Federal law. We have reached the conclusion that the facts do not show any interference with interstate commerce, nor do they constitute a defense to a prosecution for violating the state law. In our opinion, the admitted facts make appellant guilty of selling whiskey in violation of the local option law, and to have been guilty of that offense he was necessarily guilty of the offense of having or possessing whiskey for purposes of sale. He admits that he had thirteen gallons at his residence for the purpose of drawing it off into bottles, each containing less than five gallons, and that he had received letters with cash or money order enclosures from parties in Tennessee for such packages, and in the case of four packages, had already separated them from his own whiskey and marked and labeled them as the property of the purchaser, that is, in the name of the consignee, with his address, so that they were ready for shipment, and he intended to deliver them to an interstate carrier for that purpose. This state of facts shows a complete sale in McCreary County. The liquor was paid for and marked and set apart for and as the property of the buyer, and he held it as agent or bailee of the buyer, and the buyer could have possessed himself of it by an order of delivery. In the event of Frogg's death, the title to the liquor so sold would not have passed to his personal representative. 35 Cyc., 192, on the subject of sales says:

"And when specific articles are sold, if they are marked as purchased by the buyer, and set aside for him this is such an appropriation as will constitute a delivery."

In 35 Cyc., 313, the rule is again stated:

"Unless a contrary intention appears the property will pass as between the parties, although the goods remain in the custody of the seller as bailee of the buyer."

After noting the fact that this rule does not apply in the case of creditors and subsequent purchasers, the author proceeds with the discussion in this language:

"There will, however, be a delivery and change of possession sufficient to pass the property as against third persons, although the goods remain in the apparent possession of the seller, if it clearly appears that he is in possession merely as an employee of the buyer, or that he is in possession as a bailee, or trustee for the buyer; but there must be some act or circumstance to indicate the change in the character of his possession and give notice to the world of the change of ownership, or the possession will be regarded as continuing in the seller."

On page 315 the same author in discussing the effect of segregation or setting apart says:

"Although the goods remain in the physical possession of the seller, yet there is such a delivery as will pass the property in the goods even as against third persons if they are segregated and set apart for the buyer, or marked as his property."

The case of United States v. Lackey, 120 Fed., 577, is in point. It was a prosecution for selling liquor without license. The defendant delivered C. O. D. shipments to his own servant to carry by wagon from Woolwine to Roanoke, Virginia. The immediate point in the case was whether the sale took place at Woolwine or Roanoke. The court said:

"Assuming that the contract of sale on credit has been made; that the desired article has been segregated from the vendor's stock, and marked distinctly as the property of the vendee, and is still in the vendor's possession awaiting an opportunity for shipment, is this enough to transfer the title? In case where there is no express or implied agreement that the sale shall not be complete until delivery, I think the acts above mentioned transfer the title to the vendee."

After further discussing the C. O. D. feature and holding that in such shipments the sale was undoubtedly completed on delivery to the carrier, it was nevertheless further stated:

"To my mind, in all such cases, where we have no certain guide showing a different intent, the acceptance of the order for the article, as shown by the act of the seller in segregating the specific article from his stock and marking it with the address of the purchaser, is sufficient to mark the contract as closed, and to effect a transfer of title. But, if not so, certainly when delivery

by the seller to a carrier—even his own servant—is added to the other acts done by him, there is no question but that the title has passed.''

Many cases have come here from courts in local option territory where parties were prosecuted for selling liquor in such territory when the facts showed that the sale was made in wet territory, and the liquor shipped by a common carrier from wet to dry territory. In order to determine the venue, and in discussing the facts with reference to the place of sale, the court used such expressions as this: ''The title to the whiskey vested in the purchaser on its delivery to the common carrier, and the sale, therefore, took place in Catlettsburg and not in Carter County.'' Josselson Bros. v. Commonwealth, 159 Ky., 468. And in the case of Josselson Bros. v. Commonwealth, 154 Ky., 795, the place of sale is thus located:

''Therefore, when the whiskey was delivered to the carrier at Catlettsburg, the agent of the purchaser, the title thereto vested in the purchaser, and the sale took place at Catlettsburg and not in Pike County.''

But in none of the cases where such expressions are used was the court considering the elements necessary to complete a sale. Unquestionably there was a complete sale when the seller delivered the article to the common carrier. But the court did not mean to say that a completed sale cannot be otherwise consummated. The inquiry the court was making was as to place of sale, not the time of, or the ingredients of the sale.

From what we have said, we do not believe it necessary to discuss the question as to whether a state law prohibiting sales of liquor, is an interference with interstate commerce when it is intended to transport the liquor to another state. The sales in question were completed before delivery to the interstate carrier. But if the state of facts did show that there was not a complete sale until the liquor was delivered to the carrier in local option territory, we still believe it would be a sale made in local option territory, and in violation of the local option law. A leading case on this question is Kidd v. Parsons, 128 U. S., 1, in which it was held that a statute of the State of Kansas, which forbade the manufacture or sale of liquor at any point within the State of Kansas did not restrict interstate commerce, as to manufacturers of such liquors who might intend to dispose of it

exclusively to interstate purchasers. This case was followed by the U. S. Supreme Court in the case of Delamater v. S. Dakota, 205 U. S., 93.

So we have admitted facts which in our opinion constitute not only possession of whiskey for purpose of sale, but actual sale of the whiskey in territory where local option law is in force. There is a complete offense, and it makes no difference with reference to guilt or innocence that the purchaser may not intend to drink the liquor in Kentucky, or in local option territory, or that he may not get the actual possession within the State.

Appellant insists that the Act of March 19th, 1914, commonly called the shipping bill, repealed Section 2557 with its sub-sections, and 2558, and sub-sections of Kentucky Statutes, in so far as they applied to distillers, and it is argued that he may now possess, prepare for shipment, and deliver liquor to carriers for carriage to consignees in dry territory in Kentucky, although the quantity be less than five gallons. We do not believe the 1914 Act is susceptible of any such construction, nor did the case of Adams Express Co. v. Creigler, 165 Ky., 89, so hold. The 1914 Act in unmistakable terms shows to what extent Sections 2557 and 2558, Kentucky Statutes, are changed, and we have already called attention to the changes. That is, a government license to sell liquors is not presumptive evidence against a distiller as to the purpose for which he holds and possesses liquor, and a distiller may receive shipments of liquor, although they are not labeled for "personal use" as required in case of other consignees. As to shipments of liquors by a common carrier within the State, the Act of 1914 did repeal Section 2569a of the statute, so that a common carrier is now permitted to receive and transport between points in Kentucky intoxicating liquors, subject to the restrictions imposed upon them by the Act of 1914, and the Criegler case so holds. So far as this case is concerned we are unable to see that the Act of 1914 repealed or amended Sections 2557 or 2558 in any other manner than we have already indicated.

For these reasons, the judgment of the lower court is affirmed.